**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DORMIFY, INC., | ) | Case No. 24-12634 (TMH) |
| | ) | |
| Debtor. | ) | |

**DECLARATION OF**
**KAREN ZUCKERMAN IN SUPPORT OF FIRST-DAY MOTIONS**

I, Karen Zuckerman, hereby declare under penalty of perjury that the following is true to the best of my knowledge, information, and belief:

1.  I am an Authorized Representative of Dormify, Inc. ("*Dormify*" or the "*Debtor*"). I am familiar with the Debtor's day-to-day operations, business affairs, and books and records.

2.  On November 18, 2024 (the "*Petition Date*"), the Debtor filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*"), in the United States Bankruptcy Court for the District of Delaware (the "*Bankruptcy Court*"), thereby commencing the above-captioned bankruptcy case (this "*Chapter 11 Case*"). To minimize the adverse effects of the chapter 11 filing, the Debtor has requested certain limited relief in "first day" motions (collectively, the "*First Day Motions*") that have been filed with the Court.

3.  I am submitting this declaration (the "*Declaration*") in support of the Debtor's First Day Motions. Except as otherwise indicated herein, all facts set forth in this Declaration are based on my personal knowledge, my review of public and nonpublic documents, or my opinion, based on my experience and knowledge of the Debtor, its operations, and its financial condition. If called upon to testify, I could and would testify competently to the statements set forth herein.

**FIRST DAY MOTIONS**

4. The Debtor requests that the relief requested in the First Day Motions and described below be granted. I have reviewed and discussed with the Debtor's counsel each of the First Day Motions and incorporate by reference any factual statements set forth therein. It is my belief that the relief sought in the First Day Motions will be critical to the Debtor's ability to maximize the value of its bankruptcy estate for the benefit of all parties in interest.

**A.    Debtor's Emergency Motion for Entry of Interim and Final Orders *Nunc Pro Tunc* to the Petition Date Authorizing: (i) Continued Maintenance of Cash Management System and Accounts; (ii) Use of Existing Forms; and (iii) Related Relief (the "*Cash Management Motion*")**

5. By the Cash Management Motion, the Debtor seeks authorization to continue to use its Cash Management System, as well as its current stock of business forms, including but not limited to checks, letterhead, purchase orders, and invoices, without reference to the Debtor's status as a debtor-in-possession.

6. The Debtor currently maintains depository accounts (collectively, the "*Bank Accounts*"). The Debtor's use of its Bank Accounts to collect cash and satisfy its financial obligations comprise its "*Cash Management System*."

7. The Debtor's Cash Management System is integral to the operation and administration of its business. The Cash Management System allows the Debtor to: (i) monitor and control all of its cash receipts and disbursements; (ii) identify its cash requirements; and (iii) forecast its cash needs and liquidity. Given the nature of the Debtor's business, I believe that requiring the Debtor to replace its existing Bank Accounts will materially disrupt the Debtor's operations by: (a) slowing down payments to crucial vendors as many are paid through electronic fund transfers; (b) requiring the Debtor to redirect all incoming payments, including those from credit card companies and e-commerce sites, to new accounts, which would materially inhibit the

Debtor's ability to process and collect customer payments; (c) disrupting and delaying payment for payroll, administrative fees, and related taxes; (d) creating administrative burdens for the Debtor; (e) increasing the work of the Debtor's personnel, who are already addressing the many complex and varied issues related to the Chapter 11 Case; and (f) needlessly costing the Debtor time and money.  Non-essential changes to the Cash Management System would therefore result in little discernable benefit to the Debtor's bankruptcy estate or its creditors and other parties in interest.

8. Conversely, leaving the Cash Management system in place will allow me and the Debtor's limited staff to collect revenue and make disbursements as seamlessly as possible.  If the Debtor is required to alter the manner in which it collects and disburses cash, including changing bank accounts, the Debtor would have to overextend its scarce human resources.  Similarly, allowing the Debtor to continue to use all business forms, including, but not limited to, checks, letterhead, purchase orders, and invoices, as such forms were in existence before the Petition Date, will minimize disruption and expense to the estate.  The Debtor will use the appropriate designation on any new stock ordered post-petition.

9. I thus believe it will be beneficial for the Debtor, its chapter 11 prospects, and its creditors if the Cash Management System can remain intact during the Chapter 11 Case and the Debtor can continue to use its current stock business forms without reference to the Debtor status as a debtor-in-possession.

10. Furthermore, the Debtor seeks authorization to modify the signatory and authorized representative on the Bank Accounts, as needed.  Authorizing the Debtor to modify the signatory and authorized representative on the Bank Accounts, as needed, will ensure that the Debtor can continue to access and manage all of the Bank Accounts without delay.  I therefore believe that it

will be beneficial for the Debtor, its chapter 11 prospects, and its creditors if the Debtor is authorized by the Bankruptcy Court to modify the signatory and authorized representative on the Bank Accounts, as needed, in order to prevent any interruption in the Cash Management process.

11. Finally, the Debtor seeks to have a small prepetition claim, not to exceed $3,875.40, paid for the prepetition wages due to the Debtor's controller to prevent any disruption related to the controller's compensation. I believe that such a disruption will impact that employee's desire to remain with the company and perform cash management functions. Paying this claim now would protect the Debtor's ability to conduct cash management functions.

12. Based on the foregoing, I submit that the relief requested by the Cash Management Motion is necessary and appropriate, is in the best interest of the estate and creditors, and thus should be granted by this Court.

**B.     Motion of Debtor for Partial Relief from, and Modification of, Requirements for a Claims and Noticing Agent Pursuant to Local Rule 2002-1(F) (The "*Claims Agent Motion*")**

13. By the Claims Agent Motion, the Debtor seeks entry of an Order permitting its legal counsel, Goldstein & McClintock, LLLP ("*G&M*"), in conjunction with any task-based outside copy services it uses (which G&M has informed me that it charges as a "pass-through" and does not make up the cost of) to act as the noticing agent for the Debtor, and waiving the requirement for the retention of a claims agent unless and until filed claims in this case exceed two hundred (200).

14. The Debtor has filed a creditor matrix containing about 250 addresses, which it believes comprises the entire extent of its i) secured creditors; ii) accounts payable list (i.e., potential unsecured creditors); iii) all banks at which the Debtor holds accounts; (iv) litigation adverse parties; and (v) other required notice parties, in order to provide notice to any and all potential creditors or notice parties. However, the Debtor and I anticipate that only a fraction of

the parties included in the creditor matrix are likely to possess actual claims against the bankruptcy estate.

15. The Debtor's universe of creditors is thus relatively limited. Accordingly, it is my and the Debtor's business judgment that funding a claims and noticing agent would not be prudent, especially given the relatively small number of creditors in this case.

16. Further, the Debtor and I believe that, given the low number of expected claims in this case, permitting such claims to be filed with the Court will not be a burden on the Court, its staff or the system in general. The Debtor will monitor the claims register in this case, and in the event that the number of filed claims approaches two hundred (200), it will revisit the relief sought in the Claims Agent Motion.

17. As such, I believe that the proposed relief is narrowly tailored to provide the Debtor with relief and preserve the assets of the estate, while still maintaining the Court's interest in relieving its staff from burdens involved with the claims and noticing processes.

18. Based on the foregoing, I additionally submit that the Claims Agent Motion is appropriate and in the best interests of the Debtor, the estate, creditors, and other parties in interest, and should be granted in the Chapter 11 Case as requested therein.

19. I look forward to working with all parties to maximize value of the Debtor's estate.

Dated: November 21, 2024

_____
Karen Zuckerman
Authorized Representative