# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>DORMIFY, INC.,<br><br>                      Debtor. | Chapter 11<br><br>Case No. 24-12634 (TMH)<br><br>Hearing Date: January 28, 2025, at 10:00 a.m. (ET)<br>Objection Deadline: January 24, 2025, at 9 a.m. ET<br><br>Ref: Docket No. 69 |

## UNITED STATES TRUSTEE'S RESPONSE TO ORDER TO SHOW CAUSE WHY CASE SHOULD NOT BE CONVERTED TO CHAPTER 7 OR DISMISSED

Andrew R. Vara, the United States Trustee for Region 3 (the "U.S. Trustee"), through his counsel, responds to the Court's *Order to Show Cause Why Case Should Not Be Converted to Chapter 7 or Dismissed* (the "OSC") [D.I. 69]:

## PRELIMINARY STATEMENT

1. After the status conference on January 17, 2025, the Court issued the OSC. The OSC requires the Debtor to show cause why this case should not be converted to chapter 7 or dismissed. The Debtor filed its response to the OSC ("Debtor's Response"). D.I. 73. The Debtor's Response raises more questions than it answers. The Debtor fails to provide any information concerning (i) the identity of any potential DIP lenders, (ii) the terms of any financing, (iii) the identity of the purported chief restructuring officer ("CRO"), and (iv) most importantly, a credible path defining how the Debtor will be able to advance this case for the benefit of creditors as it enters its third month.

## JURISDICTION & STANDING

2. Pursuant to (i) 28 U.S.C. § 1334; (ii) applicable order(s) of the United States District Court for the District of Delaware issued pursuant to 28 U.S.C. § 157(a); and (iii) 28

U.S.C. § 157(b)(2)(A), this Court has jurisdiction to hear and determine issues raised by the OSC and the responses thereto.

3. Under 28 U.S.C. § 586, the U.S. Trustee is charged with overseeing the administration of chapter 11 cases filed in this judicial district. This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See Morgenstern v. Revco D.S., Inc. (In re Revco D.S., Inc.)*, 898 F.2d 498, 500 (6th Cir. 1990) (describing the U.S. Trustee as a "watchdog").

4. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on the OSC. *See United States Trustee v. Columbia Gas Sys., Inc. (In re Columbia Gas Sys., Inc.),* 33 F.3d 294, 295-96 (3d Cir. 1994) (noting that U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

## **FACTUAL BACKGROUND**

5. The Debtor filed its voluntary chapter 11 petition in this Court on November 18, 2024. The Debtor is a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

6. On November 21, 2024, the Debtor filed the *First Day Declaration of Karen Zuckerman*. D.I. 19. The First Day Declaration provides no discussion of the Debtor's capital structure, its funded debt or any description of its business operations.

7. On December 11, 2024, the U.S. Trustee appointed the Official Committee of Unsecured Creditors. D.I. 40.

8. On December 19, 2024, the initial meeting of creditors under section 341 of the Bankruptcy Code was held and was continued to February 10, 2025. D.I. 45.

9. On January 17, 2025, the Court issued the OSC after a status conference/hearing (the "January 17 Hearing") at which the Court stated that it (i) questioned the manner in which

the above-captioned case was being conducted and (ii) questions that are routinely answered at or prior to the "first day" hearing remained unanswered.

10. On January 21, 2025, the Debtor filed its monthly operating report ("MOR") for November 2024. D.I. 71. The November MOR was filed a month late.

11. On January 21, 2025, the Debtor filed its MOR for December 2024. D.I. 72.

12. On January 22, 2025, the Debtor filed the Debtor's Response. D.I. 73.

## RESPONSE

13. The Debtor's Response is devoid of any meaningful information upon which a stakeholder could determine whether a successful reorganization is possible. While the Debtor concedes that it has been less than transparent in these proceedings, the Debtor's Response does not provide any specifics regarding the concerns raised by the Court at the January 17 Hearing.

14. The Debtor asserts that it "has been negotiating with interested parties to 'firm up' term sheets for the proposed DIP financing." Debtor's Response, ¶ 10. The Debtor fails, however, to identify (i) any potential DIP lenders, (ii) the terms of the financing, or (iii) the collateral that would secure the financing. In fact, the Debtor has never provided any information concerning its secured creditors in either the First Day Declaration or the Debtor's Response. Consequently, it is impossible to determine the nature of secured claims against its assets. During this case, Debtor's counsel has stated to the U.S. Trustee its difficulty in securing DIP financing because of a dispute with one of the secured creditors, Eagle Bank. According to the December MOR, Eagle Bank is owed over $2,100,000. D.I. 72-1, p.4. After 60 days into this case, the Debtor should have either resolved any issue(s) with its pre-petition secured creditors consensually or, alternatively, moved to bring any disputes before the Court (e.g., by filing an adversary proceeding to determine the validity, priority and/or extent of any disputed

lien). See Fed. R. Bankr. P. 7001(b).

15. The Debtor's financial disclosures also raise questions about its financial condition. The December MOR reveals that the Debtor has less than $400,000 cash on hand. Dec. MOR, Part 1d. In the December MOR, the Debtor also states that it has "total current assets" of $11,549,130. *Id.*, Part 2 d. These assets consist of accounts receivable of $71,059, accounts receivable over 90 days of $ 32,602, and market inventory of $9,000,000. *Id.*, Part 2 a, b, and c. The sum of these three totals is over $2,500,000 less than the total current assets. The inventory is listed as having a market value of $9,000,000, but the Debtor does not supply a description of the inventory or an explanation regarding the method of valuation. More importantly, Debtor states that the inventory may be subject to a warehouseman's lien. Dec. MOR, Global Notes, ¶ 5. Consequently, more information is needed regarding the amount of the landlord's claim and the purported basis for the lien to understand whether the estate may recoup value from the inventory.

16. The Debtor also asserts that "because, of among other things, the informational hurdles in this case thus far, the Debtor has selected a [CRO]." Debtor's Response, ¶ 11. The Debtor does not identify the CRO or the terms of the engagement. Further, the Debtor provides no justification for the expense of the CRO or how the retention of the CRO would benefit the Debtor's business operations. As the December MOR reveals, the Debtor has a single employee, has less than $400,000 cash on hand, minimal accounts receivable and negative cash flow. D.I. 72. There is no evidence that the retention would be a prudent business decision.

17. The Debtor's proposed employment of a CRO underscores a recurring concern in this case: the lack of corporate governance. As the Debtor acknowledges, its CEO and CFO both resigned prior to the bankruptcy filing. Debtor's Response, ¶ 4. At the section 341

meeting, the Debtor's representative -- its only employee -- stated that the Debtor has no officers. Ms. Zuckerman has failed to appear at various critical points in this case. She did not attend the section 341 meeting, although she executed the petition. D.I. 1. She did not appear at the January 17, 2025 status conference, notwithstanding the Court's direction.

18. In short, there appear to be multiple causes for relief under section 1112(b) of the Bankruptcy Code, including a "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A).

19. The U.S. Trustee reserves all rights, remedies and obligations to, among other things, complement, supplement, augment, alter or modify this Response, file an appropriate motion, or conduct all discovery as may be deemed necessary or as may be required and to assert such other grounds as may become apparent upon further factual discovery.

**WHEREFORE,** the U.S. Trustee respectfully requests that this Court grant such relief as this Court deems appropriate, fair and just.

Dated: January 23, 2025
       Wilmington, Delaware

Respectfully submitted,

**ANDREW R. VARA**
**UNITED STATES TRUSTEE**
**Regions 3 and 9**

By: */s/ Jonathan W. Lipshie*
    Jonathan W. Lipshie
    Trial Attorney
    United States Department of Justice
    Office of the United States Trustee
    J. Caleb Boggs Federal Building
    844 King Street, Suite 2207, Lockbox 35
    Wilmington, DE 19801
    (202) 567-1124 (Phone)
    (302) 573-6497 (Fax)
    Jon.Lipshie@usdoj.gov

# CERTIFICATE OF SERVICE

       I, Jonathan W. Lipshie, counsel to Andrew R. Vara, the United States Trustee for Regions 3 and 9, do hereby certify that on this 23rd day of January 2025, I caused a true and correct copy of the *United States Trustee's Response To Order To Show Cause Why Case Should Not Be Converted To Chapter 7 or Dismissed* to be served on the parties listed below via electronic mail.

GOLDSTEIN & MCCLINTOCK, LLLP

Maria Aprile Sawczuk, Esq.
501 Silverside Road, Suite 65
Wilmington, DE 19809

Harley J. Goldstein, Esq.
Ainsley G. Moloney, Esq.
Joshua M. Grenard, Esq.
William Thomas, Esq.
111 W. Washington Street, Suite 1221
Chicago, IL 60602

Attorneys for the Debtor and
Debtor-in-Possession

       By: */s/ Jonathan W. Lipshie*
       Jonathan W. Lipshie