# EXHIBIT A

# BINDING TERM SHEET

## SECURED DEBTOR-IN-POSSESSION CREDIT FACILITY
### to DORMIFY, INC., as Borrower
### in the amount of up to $265,000

**Dated: January 27, 2025**

**DISCLAIMER:** This Term Sheet is intended to memorialize the terms of a proposal that has been agreed to, subject to definitive documentation including in the form of a loan agreement and financing order, between Dormify and the DIP Lenders (each as defined herein). The Term Sheet does not include all terms that will be agreed to between the DIP Lenders and the Dormify. Accordingly, the terms herein are subject to supplementation with terms and conditions customary to DIP financing. Both Dormify and the DIP Lenders otherwise reserve all rights with respect to this Term Sheet and the DIP financing proposed herein.

| | |
|---|---|
| **BORROWER** | Dormify, Inc., as debtor and debtor-in-possession ("**Dormify**, or the "**Debtor**") under Chapter 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**"). |
| **LENDERS** | Certain of the Debtor's prepetition noteholders either directly or indirectly owned (the "**Noteholders**"), including but not limited to Clerisy Global Fund I, L.P., Natureza Opportunity Fund I, L.P., and Sixth Avenue Partners (each individually a "**DIP Lender**" and collectively, the "**DIP Lenders**"). Additional Noteholders may participate as DIP Lenders and those parties will be identified in the loan agreement filed with the bankruptcy court. |
| **DIP FACILITY** | A secured term loan credit facility (the "**DIP Facility**") in an aggregate of **up to $265,000.00** (the "**DIP Loan**"). DIP Lender fees and expenses will not be budgeted and paid from the carve-out; however, they will constitute DIP obligations under the DIP Loan. |
| **PURPOSE** | The DIP Loan will be made for the payment of expenses arising in the Debtor's Chapter 11 case (the "**Chapter 11 Case**") and in connection with a Sale (as defined below), as set forth in the budget attached hereto as <u>Exhibit 1</u> or any other budget acceptable to the DIP Lenders and as may be approved by the Bankruptcy Court (to the extent required). |
| **SECURITY** | The DIP Facility will be secured by substantially all assets of Dormify's estate, including previously unencumbered assets upon entry of a final order. The DIP obligations up to $250,000 shall constitute a senior superpriority |

|  | priming obligation under Section 364(d) of the Bankruptcy Code, subject only to prior permitted liens of lien holders that have not consented to priming. The remainder of the DIP Obligations shall be subject to prior permitted liens, but otherwise be secured superpriority expenses. |
|---|---|
| **OTHER MATERIAL TERMS** | (A) Certain milestones acceptable to DIP Lenders would be established, including milestones connected to a Sale process that allow the Sale to close after the challenge period and prior to the Debtor's upcoming selling season.<br><br>(B) Releases and stipulations from the Debtor of the DIP Lenders, including with respect to prepetition amounts owed (subject to any applicable challenge period).<br><br>(C) Budget in form acceptable to DIP Lenders. |
| **INTEREST RATE** | 12% PIK |
| **DIP ORDER** | The order approving the DIP Facility shall be in form and substance acceptable to the DIP Lenders and shall include:<br><br>1) A finding that the DIP Lenders are good faith lenders entitled to credit bid the DIP Loan and, subject to the challenge period, all of the notes held by the DIP Lenders in the sale of Dormify under Section 363(k) of the Bankruptcy Code; and<br><br>2) Subject to the challenge period, the DIP Lenders and all of their owners, principals, limited partners, general partners, and affiliates shall be granted a full release from any and all pre-petition and post-petition claims or causes of action however arising whether relating to the Notes (as defined in the Convertible Secured Note Purchase Agreement) or otherwise. |
| **SALE PROCESS** | As a condition to the DIP Lenders providing the DIP Loan, the Debtor shall conduct a sale process (the "**Sale**") with a retained investment banker for the sale or other disposition of substantially all of the Debtor's assets (collectively, the "**Assets**") under Section 363 of the Bankruptcy Code. |

CLERISY GLOBAL FUND I, L.P.

By: _____
Name: Lisa Myers
Title: Partner


NATUREZA OPPORTUNITY FUND I, L.P.

By: _____
Name: Collin Eckles
Title: Authorized Person of its General Partner, Natureza


SIXTH AVENUE PARTNERS

By: _____
Name:
Title:

3

CLERISY GLOBAL FUND I, L.P.

By: _____
Name:
Title:


NATUREZA OPPORTUNITY FUND I, L.P.

By: _____
Name:
Title:


SIXTH AVENUE PARTNERS

By: _____
Name:   Marco Vega
Title:   Authorized Signatory

**EXHIBIT 1**
**(Budget)**

Budget as of 1-27-25

| | 6-Jan-25 | 13-Jan-25 | 20-Jan-25 | 27-Jan-25 | 3-Feb-25 | 10-Feb-25 | 17-Feb-25 | 24-Feb-25 | 3-Mar-25 | 10-Mar-25 | 17-Mar-25 | 24-Mar-25 | 31-Mar-25 | 7-Apr-25 | 14-Apr-25 | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Operational Expenditures** | | | | | | | | | | | | | | | | |
| **Payroll & Benefits** | | | | | | | | | | | | | | | | |
| Payroll - salary (Sita) | | 6,000 | | 6,000 | | 6,000 | | 6,000 | | 6,000 | | 6,000 | | 6,000 | | $ 42,000 |
| Payroll - 2025 payroll taxes | | 717 | | 717 | | 717 | | 717 | | 717 | | 717 | | | | $ 4,302 |
| 1099 pay (Amanda) | | 3,125 | 3,125 | 3,125 | 3,125 | 3,125 | 3,125 | 3,125 | 3,125 | 3,125 | 3,125 | 3,125 | 3,125 | 3,125 | 3,125 | $ 43,750 |
| Payroll taxes - Q4 2024 | | | | | 2,500 | | | | | | | | | | | $ 2,500 |
| Dental & Vision Benefits (Dec 2024) | | | | 193 | | | | | | | | | | | | $ 193 |
| 1099s for 2024 | | | | 226 | | | | | | | | | | | | $ 226 |
| **Software** | | | | | | | | | | | | | | | | |
| Software - Accounting | | 90 | | 157 | | | 90 | 157 | | | 90 | 157 | | | 90 | $ 831 |
| Software - Gusto (payroll processing) | | | | 46 | | | | | | 46 | | | 46 | | | $ 138 |
| Software - Google | 146 | | | | 180 | | | | | 180 | | | 180 | | | $ 686 |
| Software - Shopify | | | | 145 | | | | | 145 | | | | 145 | | | $ 435 |
| Software - Adobe Acrobat | 30 | | | | 30 | | | | 30 | | | | | | | $ 90 |
| **Insurance** | | | | | | | | | | | | | | | | |
| Insurance deposit | | | | 500 | | | | | | | | | | | | $ 500 |
| Insurance | | | | | | | | | | | | | | | | |
| D&O Insurance | | | 2,501 | | | | | | | | | | | | | $ 2,501 |
| **Miscellaneous** | | | | | | | | | | | | | | | | |
| Utilities | 320 | 645 | | | 160 | | | | | | | | | | | $ 1,125 |
| Bank Fees | 125 | 50 | | | 250 | 50 | | | 250 | 50 | | | 250 | 50 | | $ 1,075 |
| Office clean out | | | 3000 | | | | | | | | | | | | | $ 3,000 |
| Accounting Fees (2023 taxes) | | | | | | | | | | | | | 5,000 | | | $ 5,000 |
| **OPERATING DISBURSEMENTS** | 621 | 10,627 | 8,626 | 11,109 | 6,245 | 9,892 | 3,215 | 10,144 | 3,631 | 9,892 | 3,215 | 10,144 | 8,601 | 9,175 | 3,215 | $ 108,352 |
| **Restructuring Expenses** | | | | | | | | | | | | | | | | |
| Investment Banker | | | | | 50,000 | | | | | | | | | | | $ 50,000 |
| CRO | | | | | 15000 | | | | | | | | | | | $ 15,000 |
| Claims Agent | | | | | 20000 | | | | | | | | | | | $ 20,000 |
| Debtor's Counsel** | | | | | 200000 | | | | | | | | | | | $ 200,000 |
| UCC Counsel** | | | | | 100000 | | | | | | | | | | | $ 100,000 |
| UST Fees | | | 250 | | | | | | | | | | | 971 | | $ 1,221 |
| **RESTRUCTURING DISBURSEMENTS** | | | 250 | | 385,000 | | | | | | | | | 971 | | $ 386,221 |
| **TOTAL DISBURSEMENTS** | 621 | 10,877 | 8,626 | 11,109 | 391,245 | 9,892 | 3,215 | 10,144 | 3,631 | 9,892 | 3,215 | 10,144 | 8,601 | 10,146 | 3,215 | $ 494,573 |

**The amount of fees for the Debtor and Committee's professionals do not represent the total fees that have been incurred or will be incurred in this case, but, instead, serve as a floor for such professionals to move forward, taking the risk of collectability on the remainder of their fees.**