**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DORMIFY, INC.,[1] | ) | Case No. 24-12634-TMH |
| | ) | |
| Debtor. | ) | **Hearing Date: February 21, 2025 at 10:00 a.m. (ET)** |
| | ) | **Obj. Deadline: February 14, 2025 at 4:00 p.m. (ET)** |

## APPLICATION OF STANDVAST FULFILLMENT, LLC FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIM

Standvast Fulfillment, LLC ("Standvast"), by its undersigned counsel, hereby submits this application (the "Application") for the entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), allowing and directing payment of an administrative expense claim pursuant to section 503(b) of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and granting such other and further relief as the Court finds just and proper. In support of this Application, Standvast relies upon and incorporates by reference the *Declaration of G. Charles Roy* dated February 6, 2025 (the "Roy Declaration"), a copy of which is attached hereto as **Exhibit B**. In further support of this Application, Standvast respectfully states as follows:

### Jurisdiction and Background Regarding Bankruptcy Proceedings

1. The Court has jurisdiction over the matters raised by this Application under 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* of the United States District Court for the District of Delaware, dated February 29, 2012.

2. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

---

[1] The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is: Dormify, Inc. (5123). The location of the Debtor's corporate headquarters is 286 5th Avenue, Floor 11, New York, NY 10001.

3.      Pursuant to Local Rule 9013-1(f), Standvast consents to the entry of a final judgment or order with respect to this Application if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

4.      Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

5.      On November 18, 2024 (the "Petition Date"), Dormify, Inc. (the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

6.      The Debtor remains in possession of its assets and manages its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

**Factual Background**

7.      Standvast is a fulfillment and supply chain technology services company that serves the diverse needs of retail e-commerce customers through its nationwide fulfillment center network and proprietary multi-channel technology.  Roy Declaration at ¶ 3.

8.      Standvast and the Debtor are parties to a Fulfillment and Technology Services Agreement effective as of September 22, 2023, as amended by an Amendment #1 to Fulfillment and Technology Services Agreement effective as of March 1, 2024 (the "Services Agreement").  Roy Declaration at ¶ 4 and Exhibit 1.

9.      Pursuant to the terms of the Services Agreement, Standvast provides a broad range of services to the Debtor.  The Services Agreement sets forth the pricing for the various types of services provided by Standvast to the Debtor, including the following:

- Inbound Services: Inbound charges are tiered based on the size of the item received, and specific rates for each size category are specified in the Services Agreement.

- Outbound Services: Outbound charges are based on the size characteristics of the package being shipped, and rates for each size category are specified in the Services Agreement.

- Storage: Storage fees are calculated daily based on the cubic feet of items stored, and the daily rate per cubic foot is specified in the Services Agreement.

- Supplies: Supplies provided are billed at Standvast's cost plus a 10% markup.

- Value-Added Services: Value-added services are billed at a contracted hourly rate, as specified in the Services Agreement.

- Transportation (Base Costs): Transportation rates are determined by the service level specified in the sales order submitted to Standvast and the end customer's address. Standvast's rate card is structured similar to FedEx/UPS with detailed rates based on the type of service (*e.g.*, ground, 2-day, overnight), weight and zone. The 2024 rate card was provided in January 2024 and did not change throughout the year.

- Transportation (Pass-Through Charges): Carriers commonly assess surcharges, such as address corrections and additional handling for larger items that are billed to Standvast on behalf of the customer's shipments. Standvast bills these surcharges to its customers at the cost invoiced by the carrier plus a 10% markup. Large package surcharges are passed through at cost, without any markup.

Roy Declaration at ¶ 5.

10. The Debtor is not obligated under the Services Agreement to meet any minimum levels of usage. Instead, the Debtor is only charged for the specific services that are actually provided by Standvast based on the pricing set forth in the Services Agreement. Roy Declaration at ¶ 6.

11. Since the outset of the parties' relationship, and in accordance with the terms of the Services Agreement, Standvast has invoiced the Debtor on a weekly basis. Roy Declaration at ¶ 7.

12. Beginning in July 2024, the Debtor stopped paying Standvast's invoices on a timely basis. As of the Petition Date, the amount owed by the Debtor to Standvast exceeded $2.1 million. Roy Declaration at ¶ 8.

13. Since the Petition Date, Standvast has continued to provide services to the Debtor, including storing the Debtor's inventory. Currently, the Debtor's inventory is stored in three

3

Standvast warehouse facilities located in Maryland, Mississippi and Nevada.  Roy Declaration at ¶ 9.

14. In accordance with the terms of the Services Agreement, and consistent with past practice, Standvast has continued to invoice the Debtor for postpetition services on a weekly basis. To date, however, the Debtor has failed to pay any of Standvast's invoices for postpetition services. Roy Declaration at ¶ 10.

15. As reflected in the postpetition account statement and invoices attached to the Roy Declaration, the Debtor currently owes Standvast a total of $168,615.70 for postpetition services, $95,604.18 of which is currently past due. Roy Declaration at ¶ 11 and Exhibits 2 and 3.

16. Standvast continues to provide services to the Debtor and issue invoices on a weekly basis. Accordingly, the amount owed to Standvast for postpetition services continues to increase. Roy Declaration at ¶ 12.

17. Despite outreach efforts by Standvast, the Debtor has failed to provide any indication to Standvast that the postpetition invoices will be paid. In addition, the budget attached to the Debtor's recently-filed motion for approval of postpetition financing does not provide for payment of Standvast. Roy Declaration at ¶ 13; ECF No. 98-1 at p. 81.

## Relief Requested

18. By this Application, Standvast seeks allowance and payment of an administrative expense claim in the amount owed by the Debtor under the past due postpetition invoices.

19. The statutory basis for the relief requested in this Application is section 503(b)(1)(A) of the Bankruptcy Code.

## Legal Analysis and Argument

### A. Standvast is Entitled to an Administrative Expense Claim for the Postpetition Services Being Provided to the Debtor

20. Section 503(b)(1)(A) of the Bankruptcy Code provides that, "[a]fter notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including – (1)(A) the actual, necessary costs and expenses of preserving the estate[.]" 11 U.S.C. § 503(b)(1)(A). Section 507(a) of the Bankruptcy Code grants priority to administrative expense claims that are allowed under Section 503(b) of the Bankruptcy Code. 11 U.S.C. § 507(a)(2). To qualify as an administrative expense, a claim "must arise from a [postpetition] transaction with the debtor-in-possession" and "must be beneficial to the debtor-in-possession in the operation of the business." *In re Marcal Paper Mills, Inc.*, 650 F.3d 311, 314-15 (3rd Cir. 2011) (citing *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 532–33 (3rd Cir. 1999)). *See also In re Harnischfeger Indus., Inc.*, 293 B.R. 650, 659 (Bankr. D. Del. 2003) (stating that an administrative expense claim will be allowed where the expense arose postpetition and conferred a benefit to the debtor's estate).

21. In the context of executory contracts, a non-debtor party to an executory contract is entitled to an administrative expense claim equal to the value of any postpetition benefit conferred on the bankruptcy estate before assumption or rejection of that contract. *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 531 (1984); *see also In re Goody's Family Clothing Inc.*, 610 F.3d 812, 818-19 (3rd Cir. 2010) (noting that "when third parties are induced to supply goods or services to the debtor-in-possession pursuant to a contract that has not been rejected, the purposes of administrative claims plainly require that their claims be afforded priority") (internal citation omitted). Further, "the amount of an administrative expense claim will generally be calculated pursuant to the parties' underlying contract or agreement. In this regard, the negotiated terms of

the parties will be presumed to be the proper basis for the calculation of the administrative expense claim." *In re N. Am. Petroleum Corp. USA*, 445 B.R. 382, 401 (Bankr. D. Del. 2011) (internal citation omitted).

22. Here, the amount currently owed to Standvast for postpetition services provided to the Debtor under the terms of the Services Agreement – which amount is presumed to be the proper basis for calculating the value of the postpetition benefit that Standvast conferred on the Debtor's bankruptcy estate – is $168,615.70. As of the date of this Application, $95,604.18 of such amount is currently past due, with additional amounts becoming past due as the invoices age beyond 30 days.

23. There can be no question that the Debtor has received, and continues to receive, significant value as a result of the postpetition services provided by Standvast. Significantly, the Debtor did not seek to reject the Services Agreement at the outset of the bankruptcy proceedings or at any time since. Instead, the Debtor has continued to use the Standvast warehouse facilities and has continued to receive the benefit of the valuable services provided by Standvast. The inventory stored at the Standvast warehouse facilities is the Debtor's most valuable asset, and the preservation of such inventory is vital to the Debtor's reorganization efforts.

24. Standvast is thus entitled to an administrative expense claim in the amount owed by the Debtor under the past-due postpetition invoices.

  **B.  The Court Should Require Immediate Payment of the Administrative Expense Claim**

25. "The determination of the timing of payment of an administrative expense is a matter within the discretion of the bankruptcy court." *In re HQ Glob. Holdings, Inc.*, 282 B.R. 169, 173 (Bankr. D. Del. 2002). "In determining the time of payment, courts consider prejudice to the debtor, hardship to the claimant, and potential detriment to other creditors." *In re Garden*

*Ridge Corp.*, 323 B. R. 136, 143 (Bankr. D. Del. 2005). "In making this determination, one of the chief factors courts consider is bankruptcy's goal of an orderly and equal distribution among creditors and the need to prevent a race to a debtor's assets. . . . Courts will also consider the particular needs of each administrative claimant and the length and expense of the case's administration." *In re NE OPCO, Inc.*, 501 B.R. 233, 259 (Bankr. D. Del. 2013).

26. Here, all factors favor immediate payment. <u>First</u>, there is no prejudice to the Debtor because it is knowingly and voluntarily receiving the benefit of the valuable postpetition services provided by Standvast under the terms of an executory contract that the Debtor has elected not to reject. <u>Second</u>, there is significant prejudice to Standvast because the Debtor's inventory occupies valuable space at Standvast's warehouse facilities that could be used for other customers, and Standvast is required to maintain insurance to protect the Debtor's inventory. *See* Services Agreement at § 10. Further, Standvast – which already has gone many months without payment and is owed a significant amount on its prepetition claim – should not now be required to effectively provide involuntary postpetition financing to the Debtor. <u>Third</u>, there is no detriment to other creditors because, based on the Debtor's budget and its available cash position, funds are available to pay other administrative claimants (including professionals) on a current basis. Further, other creditors are receiving benefit from the postpetition services provided by Standvast, which are vital to the preservation of the bankruptcy estate assets.

27. Given the circumstances, Standvast should be paid on a current basis for the postpetition services it is providing to the Debtor. There is no valid reason to delay payment.

## Notice of Application

28. Notice of this Application will be served on the following: (a) counsel for the Debtor; (b) the Office of the United States Trustee for the District of Delaware; (c) counsel to the Committee; and (d) any party that has requested notice pursuant to Bankruptcy Rule 2002.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE, for the reasons set forth in this Application and such other reasons as may be presented at any hearing on this Application, Standvast respectfully requests that the Court enter an order, substantially in the form of the Proposed Order:

(a) Granting Standvast an allowed administrative expense claim in the amount owed by the Debtor under the past-due postpetition invoices issued by Standvast to the Debtor,

(b) Directing the Debtor to pay the administrative expense claim with seven (7) days after the date of entry of the order allowing the administrative expense claim; and

(c) Granting such other and further relief as is just and proper under the circumstances.

Dated: February 6, 2025
Wilmington, Delaware

Respectfully submitted,

**DLA PIPER LLP (US)**

 /s/ Stuart M. Brown
Stuart M. Brown (DE 4050)
Roxanne M. Eastes (DE 6654)
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801
Telephone: (302) 468-5700
Facsimile: (302) 394-2341
Email: stuart.brown@us.dlapiper.com
       roxanne.eastes@us.dlapiper.com

- and -

C. Kevin Kobbe (admitted *pro hac vice*)
650 South Exeter Street, Suite 1100
Baltimore, Maryland 21202
Telephone: (410) 580-4189
Email: kevin.kobbe@us.dlapiper.com

*Counsel for Standvast Fulfillment, LLC*