# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| DORMIFY, INC., [1] | ) Case No. 24-12634 (TMH) |
| | ) |
| Debtor. | ) **(Requested) Hearing Date: February 21, 2025, at 10:00 a.m. (E** |
| | ) **(Requested) Objection Deadline: February 18, 2025 at 4:00** |
| | ) **p.m. (ET)** |

**DEBTOR'S MOTION FOR ORDERS (I)(A) APPROVING BIDDING
PROCEDURES FOR THE SALE OF THE DEBTOR'S ASSETS AND THE FORM
AND MANNER OF NOTICE RELATED THERETO, (B) AUTHORIZING THE
DEBTOR TO SELECT A STALKING HORSE BIDDER AND ENTER INTO A
PURCHASE AGREEMENT WITH SUCH BIDDER PROVIDING FOR CERTAIN
BID PROTECTIONS, AND (C) APPROVING PROCEDURES FOR THE ASSUMPTION
AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES;
(II) (A) APPROVING THE SALE OF THE DEBTOR'S ASSETS, FREE AND
CLEAR OF ALL INTERESTS AND (B) AUTHORIZING THE ASSUMPTION
AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND
UNEXPIRED LEASES; AND (III) GRANTING RELATED RELIEF**

The above-captioned debtor and debtor in possession (the "*Debtor*") moves (this "*Motion*")

under (i) sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code (the

"*Bankruptcy Code*"), (ii) Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure

(the "*Bankruptcy Rules*") and (iii) Rules 2002-1 and 6004-1 of the *Local Rules of the United States*

*Bankruptcy Court for the District of Delaware* (the "*Local Rules*") for entry of two orders:

*First*, the Debtor seeks entry of an order substantially in the form attached hereto as **Exhibit**

**A** (the "*Bidding Procedures Order*"):

    (a)    approving the bidding procedures (the "*Bidding Procedures*") in substantially the form attached as **Exhibit 1** to the Bidding Procedures Order to govern any sale (the "*Sale*") of all or substantially all of the Debtor's assets (the "*Assets*"), pursuant to section 363 of the Bankruptcy Code;

---

[1]    The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is: Dormify, Inc. (5123). The location of the Debtor's corporate headquarters is 286 5th Avenue, Floor 11, New York, NY 10001.

(b)    establishing the following dates and deadlines in connection with the Bidding Procedures:

- <u>Stalking Horse Designation Deadline</u>:  March 3, 2025 at 4:00 p.m. (prevailing Eastern Time);

- <u>Bid Deadline</u>:  April 18, 2025 at 4:00 p.m. (prevailing Eastern Time), as the deadline by which all binding bids must be received by the Debtor pursuant to the Bidding Procedures (the "*Bid Deadline*");

- <u>Auction (if necessary)</u>: April 21, 2025 at 10:00 a.m. (prevailing Eastern Time) as the date by which the Debtor may conduct the Auction (as defined below);

- <u>Sale Hearing</u>:  April 25, 2025 at 10:00 a.m. (prevailing Eastern Time), or as soon thereafter as the Court's calendar permits, as the date for a hearing to approve the Sale (if any) of the Assets (the "*Sale Hearing*"); and

- <u>Sale Closing</u>: April 30, 2025 as the date by which the Sale must be consummated (the "*Sale Closing Deadline*").

(c)    approving the form and manner of notice of the Sale and the Bid Deadline, substantially in the form attached as **<u>Exhibit 2</u>** to the Bidding Procedures Order (the "*Sale Notice*");

(d)    authorizing the Debtor and its Investment Banker, in consultation with the DIP Lender and the Committee (each as defined below, and collectively, the "*Consultation Parties*"),[2] in accordance with the terms of the Bidding Procedures, to select a stalking horse bidder (a "*Stalking Horse Bidder*") and enter into a purchase agreement with any such Stalking Horse Bidder (the "*Stalking Horse Agreement*"), which may provide for certain bid protections, including a break-up fee, with the consent of the Consultation Parties;

(e)    authorizing the Debtor and its Investment Banker to run the marketing and sale process of the Assets (the "*Sale Process*");

---

[2]    If any DIP Lender submits a Qualifying Bid or Credit Bid for the Assets, the other DIP Lenders will maintain their consultation rights as a Consultation Party, provided that the DIP Lender that submitted a Bid, and any of its affiliates or related parties will be excluded from any discussions or deliberations regarding a transaction involving the Assets, and shall not provide any confidential information regarding the Assets or otherwise involving the Sale Process to the bidding DIP Lender.

(f)     approving (i) procedures (the "*Assumption and Assignment Procedures*") for the assumption and assignment of certain of the Debtor's executory contracts and unexpired leases (the "*Contracts*") as set forth in the Bidding Procedures Order, including fixing the deadline to file any Cure/Assignment Objections (as defined below) as no later than 4:00 p.m. (prevailing Eastern Time) on March 17, 2025, and (ii) the form and manner of notice of assumption and assignment of Contracts, including the form and manner of notice of proposed cure amounts (the "*Cure Amounts*") attached to the Bidding Procedures Order as **Exhibit 3**;

(g)     scheduling the auction (the "*Auction*"), if any, and the Sale Hearing and approving the form and manner of notice thereof; and

(h)     granting related relief.

*Second*, the Debtor seeks entry of an order in the proposed form that will be filed by the Debtor in advance of the hearing to consider such order (the "*Sale Order*"):

(a)     authorizing and approving the Sale of the Assets free and clear of liens, claims, encumbrances, and other interests on the terms set forth in a definitive purchase agreement (the "*Definitive Purchase Agreement*"), in the proposed form that will be filed by the Debtor in advance of the hearing to consider the Sale Order;

(b)     authorizing and approving the assumption and assignment of certain Contracts in connection therewith; and

(c)     granting related relief.

In support of this Motion, the Debtor respectfully states as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b), and the Debtor consents, pursuant to Local Rule 9013-1(f), to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court,

absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.     Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The statutory predicates for the relief requested herein are sections 105, 361, 362, 364(c), 364(d), 364(e), 503, and 507 of the Bankruptcy Code, rules 2002, 4001, and 9014 of the Bankruptcy Rules, and rules 2002-1(b), 4001-1, 4001-2, and 9013-1 of the Local Rules.

## BACKGROUND[3]

4.     On November 18, 2024 (the "*Petition Date*"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "*Chapter 11 Case*"). The Debtor is authorized to continue operating its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.     On December 11, 2024, the Office of the United States Trustee appointed a statutory committee of unsecured creditors (the "*Committee*") in this Chapter 11 Case [Docket No. 40] pursuant to section 1102 of the Bankruptcy Code.

### A.  **The Debtor's Business**

6.     The Debtor owns and operates dormify.com, which was founded in July 2011 to provide a one-stop-shop online for furniture, bedding, and other home accessories for college students outfitting their dormitory rooms. The Debtor prides itself on being the ultimate destination for styling small dormitory spaces, while making the process both seamless and fun.

---

[3]     A detailed description of the Debtor and its business, including the facts and circumstances giving rise to this Chapter 11 Case, is set forth in the *Declaration of Karen Zuckerman in Support of Chapter 11 Case* [Docket No. 76] (the "*Zuckerman Declaration*"). Capitalized terms used but not defined have the meanings ascribed to them in the Zuckerman Declaration.

7.     Because of the nature of the Debtor's business — selling dormitory essentials for college students preparing to go back to school in the fall — the Debtor's sales are largely seasonal. The Debtor's key selling season runs from May to August each year (the "*Selling Season*").

8.     In the months just prior to the Petition Date, the Debtor employed approximately 40 full-time and five part-time employees. As of the Petition Date, the Debtor reduced its workforce only to the amount needed to preserve the value of the Debtor as a going-concern business during the pendency of this Chapter 11 Case and before the next Selling Season.

9.     The Debtor's principal assets consist of its intellectual property, contracts with hundreds of universities and colleges throughout the U.S., goodwill, and inventory, the sale of which, with the proper runway for marketing, could return significant cash to the Debtor's estate.

**B.  Debtor-in-Possession Financing**

10.     The Debtor has an immediate need to obtain postpetition financing to administer its Chapter 11 Case and to conduct a going concern Sale of its Assets. Without these funds, the Debtor will lack sufficient liquidity to robustly market its assets and thereby maximize the value of its estate for the benefit of all stakeholders.  Certain of the Debtor's prepetition noteholders (collectively and as identified in the Credit Facility, the "*DIP Lender*") have therefore agreed to provide a superpriority priming senior secured term loan facility in an aggregate principal amount not to exceed $265,000 (the "*Credit Facility*").

11.     On January 31, 2025, the Debtor filed the *Debtor's Emergency Motion for Entry of Interim and Final Orders (i) Authorizing the Debtor to Obtain Postpetition Financing, (ii) Granting Liens And Providing Superpriority Administrative Expense Status, (iii) Modifying The Automatic Stay, (iv) Scheduling A Final Hearing, And (v) Granting Related Relief* [Docket No. 90] (the "*DIP Motion*"), seeking authority to enter into the Credit Facility and related relief.

12.    The Debtor intends to use the proceeds of the Credit Facility, together with its unencumbered cash,[4] to administer this Chapter 11 Case and fund a Sale. As a condition to the DIP Lender providing the Credit Facility, the Credit Facility requires the Debtor to conduct a Sale Process with a retained investment banker and to meet certain milestones (collectively, the "*DIP Milestones*"), as follows:

> (i) The Bankruptcy Court shall enter the Interim Order approving the DIP Credit Agreement on an interim basis by February 6, 2025.
>
> (ii) The Bankruptcy Court shall enter the Final Order approving the DIP Credit Agreement on a final basis no later than February 24, 2025.
>
> (iii) The Debtor shall file this Motion with the Bankruptcy Court on or before February 7, 2025.
>
> (iv) The Bankruptcy Court shall have entered an order approving the retention by the Debtor of an investment banker by February 24, 2025.
>
> (v) The Bankruptcy Court shall have entered the Bidding Procedures Order no later than February 24, 2025, and any auction provided for the in the Bidding Procedures Order shall occur after the Challenge Period (as defined in the DIP Orders).
>
> (vi) The Bankruptcy Court shall have entered the Sale Order no later than April 29, 2025, and the sale shall close no later than April 30, 2025.

*See* DIP Motion at 16-17.

13.    On February 5, 2025, this Court entered the *Interim Order (i) Authorizing the Debtor to Obtain Postpetition Financing, (ii) Granting Liens and Providing Superpriority Administrative Expense Status, (iii) Modifying the Automatic Stay, (Iv) Scheduling A Final Hearing And (V) Granting Related Relief* [docket No. 109] (the "*Interim Order*"), authorizing the Debtor to obtain $50,000 in proceeds from the Credit Facility on an interim basis.

14.    The final hearing on the DIP Motion is scheduled for February 21, 2025.

---

[4]    As of the date of the DIP Motion, the Debtor has a total balance of $211,140.08 in its prepetition operating account at JPMorgan Chase Bank, N.A. (the "*Unencumbered Cash*"), which funds the Debtor believes are unequivocally unencumbered.

C. **The Proposed Auction and Sale Process**

15.     To date, the Debtor has received numerous expressions of interest for the purchase of the Assets. Consistent with the DIP Milestones, the Debtor is in the process of retaining (and will seeking this Court's approval of the retention of) an investment banker (once retained and approved by this Court, the "*Investment Banker*") to continue to engage with all interested parties and to assist in soliciting higher or otherwise better Bids (as defined below). The Debtor intends for the Investment Banker to conduct a marketing, overbid, and Sale Process, including assisting the Debtor in locating and negotiating with prospective Stalking Horse Bidders and other potential bidders and facilitating an auction Sale Process designed to obtain the highest price and maximize the value of the Assets. The Investment Banker will prepare marketing materials and establish a data room for potential bidders.

16.     The Bidding Procedures provide for an open, comprehensive Sale Process that encourages Qualified Bidders (as defined in the Bidding Procedures) to submit bids for the Assets (the "*Bids*"). The timeline set forth in the Bidding Procedures was calculated to balance the need to provide adequate notice to parties in interest and potential bidders and the need to run an expeditious and efficient Sale Process that can close before the start of the Debtor's upcoming Selling Season.

17.     The Debtor has determined that the Bidding Procedures are in the best interests of the Debtor's estate and provide interested parties with sufficient opportunity to participate. Accordingly, this Motion seeks approval of the Bidding Procedures to establish an open process for solicitation, receipt, and evaluation of Indications of Interest and Bids on a timeline that allows the Debtor to consummate a sale of the Assets in a manner that maximizes value for creditors.

### D. **Bidding Procedures**[5]

18.     The following summary describes the salient features of the Bidding Procedures and discloses certain information required under Local Rule 6004-1. All interested bidders should read the Bidding Procedures attached to the Bidding Procedures Order in their entirety.

19.     The Bidding Procedures are designed to generate the highest or otherwise best available recoveries for the Debtor's stakeholders by encouraging prospective bidders to submit competitive, value-maximizing bids for the Assets. The Debtor proposes the following timeline for the Sale:

| Event or Deadline | Date and Time[6] |
|---|---|
| Bidding Procedures Hearing | February 21, 2025 at 10:00 a.m. (prevailing Eastern Time) |
| Service and Publication of Sale Notice | One (1) business day after entry of Bidding Procedures Order or as soon as reasonably practicable thereafter |
| Debtor's Deadline to File and Serve Cure Notices | March 3, 2025 |
| Cure/Assignment Objection Deadline | March 17, 2025 at 4:00 p.m. (prevailing Eastern Time) |
| Deadline to Designate Stalking Horse Bid | March 3, 2025 |
| Debtor's Deadline to File Stalking Horse Notice (if necessary) | Two (2) business days after entering into such agreement |
| Bid Deadline | April 18, 2025 at 4:00 p.m. (prevailing Eastern Time) |
| Determination of Qualified Bids | April 20, 2025 |

---

[5]     The summary of the Bidding Procedures contained herein is qualified in its entirety by the actual terms and conditions of the Bidding Procedures as provided in the Bidding Procedures Order. To the extent that there is any conflict between any summary contained herein and the actual terms and conditions of the Bidding Procedures as provided in the Bidding Procedures Order, the actual terms and conditions of the Bidding Procedures as provided in the Bidding Procedures Order shall control.

[6]     All dates and deadlines are subject to modification as may be agreed upon by the Debtor, the Committee and the DIP Lender.

| Event or Deadline | Date and Time[6] |
|---|---|
| Auction (if necessary) | April 21, 2025 at 10:00 a.m. (prevailing Eastern Time) at a place, including via remote video, to be announced.[7] |
| Identification of Successful Bidder and Backup Bidder, if any | April 23, 2025 at 4:00 p.m. (prevailing Eastern Time) |
| Sale Objection Deadline | April 24, 2025 at 4:00 p.m. (prevailing Eastern Time) |
| Sale Hearing | April 25, 2025 at 10:00 a.m. (prevailing Eastern Time) or as soon thereafter as the Court's calendar permits |
| Sale Closing Deadline | April 30, 2025 |

**E.  Stalking Horse Bidder and Bid Protections**

20.     By this Motion and in connection with the Bidding Procedures, the Debtor requests that it be authorized, but not directed, to select a Stalking Horse Bidder and enter into a Stalking Horse Agreement for such Stalking Horse Bidder's purchase of the Assets.  A Stalking Horse Agreement may include, among other things, the documentation requirements set forth in section IV.C[8] of the Bidding Procedures.

21.     If the Debtor enters into a Stalking Horse Agreement that the Consultation Parties determine is in the best interests of the Debtor and its estate, the Debtor will file with the Court and serve on the Notice Parties (as defined below) a notice (the "*Stalking Horse Notice*") that includes:  (a) the identification of the Stalking Horse Bidder; (b) a copy of the Stalking Horse Agreement; (c) the form of Bid Protections; (d) the deposit paid by the Stalking Horse Bidder; and (e) a summary of the proposed transaction in accordance with Local Rule 6004-1(b).

22.     If the Debtor, in an exercise of its business judgment, determines that providing bid protections, including a break-up fee of up to 3% of the purchase price (the "*Bid Protections*") to

---

[7]     If the Debtor decides to hold a live, in-person Auction, Qualified Bidders shall be able to submit Bids remotely.

any Stalking Horse Bidder is appropriate, necessary, and value-additive to the process under the circumstances, the Debtor will be required to obtain consent from the Consultation Parties to provide such Bid Protections.

23.     Having the flexibility to designate a Stalking Horse Bidder and grant Bid Protections will provide the Debtor with the ability to maximize the value of the Assets.  Given the Debtor's need to maximize value for creditors and other stakeholders through a timely and efficient marketing and Sale Process, the Debtor submits that the ability to designate a Stalking Horse Bidder and offer Bid Protections to such bidder, if necessary under the circumstances and with the consent of the Consultation Parties, is a reasonable and sound exercise of the Debtor's business judgment and provides an actual benefit to the Debtor's estate.

### A.     Sale Notice

24.     In accordance with Bankruptcy Rule 2002(a) and (c), the Debtor (or its agents) shall serve by first-class mail the Sale Notice, substantially in the form attached to the Bidding Procedures Order as **Exhibit 2**, upon: (a) all entities known to have expressed a *bona fide* interest in a transaction with respect to the Assets; (b) all entities known to have asserted any lien, claim, or encumbrance in or upon any assets comprising the Assets; (c) all federal, state, and local environmental, regulatory, or taxing authorities or recording offices which have a reasonably known interest in the relief requested by this Motion; (d) known counterparties to any unexpired leases or executory contracts that could be assumed and assigned to a Successful Bidder; (e) the Office of the United States Trustee for the District of Delaware; (f) all taxing authorities having jurisdiction over any of the Assets, including the Internal Revenue Service; (g) the Securities and Exchange Commission; (h) the Offices of the United States Attorney for the District of Delaware;

and (i) all persons and entities that have filed a request for service of filings in this Chapter 11 Case under Bankruptcy Rule 2002 (collectively, the "*Notice Parties*").

**B.  Assumption and Assignment of Contracts and Cure Notice**

25.  The Debtor seeks approval of the Assumption and Assignment Procedures set forth in the Bidding Procedures Order to facilitate the fair and orderly assumption and assignment of Contracts.  The Assumption and Assignment Procedures will notify the Non-Debtor Counterparties (as defined below) of the potential assumption and assignment of their contracts and/or leases and the Debtor's calculation of any cure amount.

26.  The Debtor also seeks approval of the Cure Notice, substantially in the form attached to the Bidding Procedures Order as **Exhibit 3**, which it proposes to serve on each non-Debtor counterparty (each, a "*Non-Debtor Counterparty*") to an executory contract or unexpired lease related to any of the Assets which may be assumed or assumed and assigned, no later than one day before the Sale Hearing.  The Cure Notice will:

(a)  identify each Contract;

(b)  state the cure amounts, if any, that the Debtor believes are necessary to assume such Contracts under section 365 of the Bankruptcy Code (the "*Cure Amount*");

(c)  include a statement that the assumption and assignment of such Contract is neither required nor guaranteed;

(d)  notify the Non-Debtor Counterparty that its contract(s) and/or lease(s) may be assumed and assigned to a Stalking Horse Bidder, if any or to such other Successful Bidder at the end of the Auction, if any;

(e)  inform the Non-Debtor Counterparty that objections (a "*Cure/Assignment Objection*"), if any, to one or more of (i) the proposed Cure Amount, (ii) the ability of a Stalking Horse Bidder, if any, to provide adequate assurance of future performance, and (iii) the proposed assumption, assignment, and/or transfer of its contract(s) or lease(s) (including the transfer of any related rights or benefits thereunder), other than objections that relate specifically to the identity of any Successful Bidder (other than the Stalking Horse Bidder, if any), must: (x) be in writing; (y) state with specificity the nature of such objection, including the amount

of Cure Amount in dispute; and (z) be filed with the Court and properly served on the Notice Parties to be received no later than 4:00 p.m. (prevailing Eastern Time) on March 17, 2025 (the "*Cure/Assignment Objection Deadline*"); *provided*, that if the Successful Bidder is a party other than the Stalking Horse Bidder, if any, objections of Non-Debtor Counterparties related to the identity of such other Successful Bidder must: (x) be in writing; (y) state with specificity the nature of such objection; and (z) be filed with the Court and properly served on the Notice Parties to be actually received no later than the Sale Objection Deadline (as defined below); and

(f)     state the date of the Sale Hearing and note the possibility of adjournment.

27.     The Debtor proposes that any Cure/Assignment Objection must be in writing, filed with the Clerk of the Court, 824 N. Market St., 3rd Floor, Wilmington, DE 19801, and served on the Notice Parties to be received by the Cure/Assignment Objection Deadline.

28.     If no objection to the proposed Cure Amounts is timely received, the Cure Amounts set forth in the Cure Notice shall be controlling and binding on the applicable Non-Debtor Counterparty, notwithstanding anything to the contrary in any assigned Contracts or other documents as of the date of the Cure Notice.

29.     If any Non-Debtor Counterparty does not timely file and serve a Cure/Assignment Objection, such Non-Debtor Counterparty will be: (i) deemed to have consented to the Cure Amounts, if any, set forth in the Cure Notice; (ii) barred, estopped, and enjoined from asserting any additional Cure Amounts under the assumed and assigned Contracts; (iii) barred from objecting to the assumption and assignment of such Contracts to the Successful Bidder; and (iv) barred from objecting to adequate assurance of future performance by such Successful Bidder.

30.     If the Debtor receives any Cure/Assignment Objection that relates solely to the proposed Cure Amount set forth in the Cure Notice, the Debtor proposes that it may, with the consent of, or at the direction of, a Stalking Horse Bidder or other Successful Bidder, pay the undisputed portion of such Cure Amount and place the disputed amount in a segregated account

pending further order of the Court or mutual agreement of the parties. In that case, the objecting Non-Debtor Counterparty will have recourse only to the funds held in such segregated account. So long as the disputed amount is held in such segregated account, the Debtor may, without delay, assume and assign the Contract that is the subject of such Cure/Assignment Objection.

### C.     Request to Set a Date for the Sale Hearing and Sale Objection Deadline

31.     The Debtor intends to present the Successful Bid (as defined in the Bidding Procedures) for approval by the Court at the Sale Hearing currently proposed for April 25, 2025 at 10:00 a.m. (prevailing Eastern Time), pending the Court's availability and subject to change in accordance with the Bidding Procedures. The Debtor shall be deemed to have accepted a Bid only when the Bid has been approved by the Court at the Sale Hearing.

32.     Subject to entry of the Bidding Procedures Order, all objections to a Sale (a "*Sale Objection*") must be in writing and filed on and served so as to be received by **4:00 p.m. (prevailing Eastern Time) on April 24, 2025** the ("*Sale Objection Deadline*"), and filed with the Clerk of the Court, 824 Market St. N, 3rd Floor, Wilmington, DE 19801. In addition, any Sale Objection must be served on the Notice Parties to be received on the Sale Objection Deadline.

### BASIS FOR RELIEF

### A.     The Bidding Procedures Are Fair and Reasonable

33.     In accordance with Bankruptcy Rule 6004(f)(1), sales of property outside the ordinary course of business may be by private sale or by auction. As described above, the Bidding Procedures ensure a fair, comprehensive process that allows for the consideration of Bids to the extent such Bids maximize value and can be executed efficiently and reliably.

34.     The Debtor believes that the Bidding Procedures are appropriate under sections 105 and 363 of the Bankruptcy Code to ensure that the bidding and sale process is conducted fairly and will yield the highest or otherwise best value for the Debtor's estate and stakeholders. The Bidding

Procedures are designed to facilitate a competitive bidding process in which all potential bidders are encouraged to participate and submit competing bids for the Assets, as provided in the Bidding Procedures. The Bidding Procedures also provide potential bidders with sufficient notice and opportunity to submit the necessary materials to gain access to diligence materials necessary to submit a timely and informed Bid. Thus, the Debtor, the Committee and all parties in interest can be assured that the consideration for the Assets, including the consideration to be provided by a Stalking Horse Bidder, if any, in exchange for the Assets, if no other party submits a Qualified Bid, will be fair and reasonable. At the same time, the Bidding Procedures allow the Debtor to consider all competing offers and to select, in its reasonable business judgment, the highest or otherwise best offer for the Assets.

35.     The Debtor believes that the Bidding Procedures provide an appropriate framework for the sale of the Assets that will enable the Debtor to review, analyze, and compare all offers received to determine which offer is the highest or otherwise best offer and in the best interests of the Debtor's estate, creditors, and stakeholders. The Debtor believes that the proposed deadlines and milestones for noticing, marketing, and selling the Assets offer potential bidders ample opportunity to prepare and submit Qualified Bids. Accordingly, the Debtor believes that the Court should approve the Bidding Procedures.

**B.     Approval of the Sale is Warranted Under Section 363(b) of the Bankruptcy Code**

36.     The Debtor submits that compelling business justifications exist for the proposed Sale, and thus the Sale should be approved as a sound exercise of the Debtor's business judgment.

37.     Section 363 of the Bankruptcy Code provides that "[t]he [debtor-in-possession], after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate . . ." 11 U.S.C. § 363(b)(1). The paramount goal in any proposed sale of

property of the estate is to maximize the proceeds received by the estate. *See In re Adams Res. Expl. Corp.*, No. 17-10866 (KG), at 12 (Bankr. D. Del. 2017) ("The relief requested in the Sale Motion . . . is a necessary and appropriate step toward enabling the Debtor to maximize the value of its bankruptcy estate, and it is in the best interests of the Debtor, its estate, and its creditors."); *In re Integrated Res., Inc.*, 147 B.R. 650, 659 (S.D.N.Y. 1992) ("[I]t is a well-established principle of bankruptcy law that the objective of the bankruptcy rules and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate."); *In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate.").

38.     Following the decision in *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986), courts have used the "sound business purpose" standard for approving sales under section 363. *See, e.g.*, *In re ICL Holding Co.*, 802 F.3d 547, 551 (3d Cir. 2015); *Myers* v. *Martin* (*In re Martin*), 91 F.3d 389, 395 (3d Cir. 1996) (approving a sale under section 363 where there was a "legitimate business justification"); *see also In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).    When evaluating whether a sale of property under section 363 is supported by a sound business purpose, courts consider a variety of factors that essentially represent a "business judgment" test.  *In re Culp*, 550 B.R. 683, 697 (Bankr. D. Del. 2015).  The "sound business purpose" test requires a debtor to establish that: "(1) a sound business purpose exists for the sale; (2) the sale price is fair; (3) the debtor has provided adequate and reasonable notice; and (4) the purchaser has acted in good faith." *In re Decora Indus., Inc.*, No. 00-4459, 2002 WL 32332749, at *2 (D. Del. May 20, 2002) (citing *Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991)); *see also In re: Pursuit Cap. Mgmt., LLC*, No. BR 14-10610- LSS, 2016 WL 5402735, at *4 (D. Del. Sept. 26, 2016).

39. As discussed above, the Debtor believes that a going concern Sale of its Assets pursuant to section 363 of the Bankruptcy Code will yield the greatest return to its creditors. Based on the expressions of interest received to date and discussions with potential Investment Bankers about their marketing capabilities, the Debtor has reasonably concluded that the efficient Sale of its Assets to a Stalking Horse Bidder, if any, or any other Successful Bidder represents the best opportunity for the Debtor to maximize value and preserve its going concern value to benefit its stakeholders. Engaging in the proposed marketing process under the supervision of the Court—with the potential benefit of a Stalking Horse Bidder, should the Debtor choose to designate any as the "baseline" bid—will ensure that the marketing process is open and comprehensive, yet expeditious, thereby establishing that any Sale represents a fair transaction that maximizes the value of the Debtor, while ensuring that the company is in a position to operate in time for the next Selling Season.

40. Additional "market exposure" and an auction process—the best means for establishing whether a fair and reasonable price is being paid—will undoubtedly provide more value to the Debtor's estate than the alternative — a liquidation of the Assets. Consequently, the proposed Sale in accordance with the Bidding Procedures satisfies the "sound business purpose" test for the sale of assets outside the ordinary course of business under section 363(b) of the Bankruptcy Code.

41. Along with the fair and reasonable value offered by the Stalking Horse Bidder, if any, or other Successful Bidder for the Assets, the Definitive Purchase Agreement, a version of which shall be filed before the Sale Hearing, will be the product of vigorous arms'-length, good-faith negotiations among the relevant parties.

42. Lastly, the Debtor is also proposing adequate notice of the Sale in the Chapter 11 Case, including notice to potentially interested purchasers, the Debtor's creditors, and Contract counterparties, and publication notice on the Debtor's website maintained by Reliable, the Debtor's claims and noticing agent, to ensure that all interested parties are aware of the opportunity to submit Bids for the Assets.

43. Accordingly, the Debtor submits that the proposed Sale as contemplated herein and under the process set forth in the Bidding Procedures is in the best interests of the Debtor, its estate, and its creditors, and should be approved.

**C.    The Assets Should be Sold Free and Clear of Claims, Liens, and Encumbrances Under Section 363(f) and Successor Liability Claims**

44. The Debtor also submits that any Sale should be free and clear of any and all claims, liens, and encumbrances under section 363(f) of the Bankruptcy Code.  Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of third-party interests only if:

> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interests; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).  Since section 363(f) of the Bankruptcy Code is written in the disjunctive, any of the five conditions provides authority to sell free and clear of claims, liens, and encumbrances. *See In re Pacific Energy Res Ltd., et al.*, Case No. 09-10785 (KJC) (Bankr. D. Del. Aug. 18, 2009); *In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("[I]f any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens."); *In re Flying J Inc., et al.*, Case No. 08-13384 (MFW) (Bankr. D. Del. July 27, 2009).

45.     The Debtor submits that each lien that is not an assumed liability or permitted encumbrance under the Definitive Purchase Agreement satisfies at least one of the five conditions of section 363(f) of the Bankruptcy Code.  If an entity with liens on certain of the Assets does not consent to the proposed Sale of such assets, the Debtor intends to demonstrate at the Sale Hearing its satisfaction of the requirements of section 363(f) of the Bankruptcy Code, including because the Debtor may sell the Assets free and clear of any other interests under section 363(f)(5) of the Bankruptcy Code because the liens on any assets sold will attach to the cash proceeds of the Sale in their order of priority and entities holding such interests could be compelled to accept money satisfaction in legal or equitable proceedings.  *See In re Boston Generating, LLC*, 440 B.R. 302, 332 (Bankr. S.D.N.Y. 2010); *In re Beker Indus., Corp.*, 63 B.R. 474, 477–78 (Bankr. S.D.N.Y. 1986).  Accordingly, under section 363(f) of the Bankruptcy Code, the Debtor may sell the Assets free and clear of all claims, liens, and encumbrances.

46.     Moreover, the Debtor will send the Sale Notice to any purported lienholders.  If such lienholders do not object to the proposed Sale, then their consent should reasonably be presumed.  Accordingly, the Debtor requests that unless a party asserting a lien on any of the Assets (other than for assumed liabilities or permitted encumbrances under a Definitive Purchase Agreement) timely objects to this Motion, such party shall be deemed to have consented to the Sale approved at the Sale Hearing.  *See Hargave* v. *Twp. of Pemberton*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (by not objecting to sale motion, creditor deemed to consent); *Pelican Homestead* v. *Wooten*, 61 B.R. 661, 667 (Bankr. W.D. La. 1985) (same); *see also*, *Precision Indus., Inc.* v. *Qualitech Steel SBQ, LLC*, 327 F.3d 537, 548 (7th Cir. 2003) (finding that a lessee who did not object to the sale order or seek adequate protection had no additional recourse when leasehold interest was sold through a section 363 sale).

47.     It is also appropriate to sell the Assets free and clear of successor liability relating to the Debtor's business.  Such limitations on successor liability ensure that the Successful Bidder is protected from any claims or lawsuits premised on the theory that the Successful Bidder is a successor in interest to the Debtor.  Courts have consistently held that a buyer of a debtor's assets pursuant to a section 363 sale takes free and clear from successor liability relating to the debtor's business.  *See, e.g.*, *In re Trans World Airlines, Inc.*, 322 F.3d 283, 288–90 (3d Cir. 2003) (sale of assets under section 363(f) barred successor liability claims for employment discrimination and rights under travel voucher program); *In re Leckie Smokeless Coal Co.*, 99 F.3d 573, 585 (4th Cir. 1996) (affirming the sale of debtors' assets free and clear of certain taxes); *In re Ormet*, 2014 WL 3542133, at *4 (Bankr. D. Del. July 17, 2014) (permitting a sale free and clear of successor liability claims relating to an under-funded pension plan); *In re Insilco Techs., Inc.*, 351 B.R. 313, 322 (Bankr. D. Del. 2006) (stating that a 363 sale permits a buyer to take ownership of property without concern that a creditor will file suit based on a successor liability theory).

48.     The purpose of a sale order purporting to authorize the transfer of assets free and clear of all claims, liens, and encumbrances would be defeated if claimants could thereafter use the transfer as a basis to assert claims against a purchaser arising from a seller's pre-sale conduct.  Moreover, without such assurances, potential bidders may choose not to participate in the Auction or, if they did, would submit reduced bid amounts.  To that end, the Debtor submits that the Successful Bidder consummating a Sale should not be liable under any theory of successor liability relating to the Debtor's business, but should take the acquired Assets free and clear.

**D.     The Successful Bidder Should be Entitled to the Protections of Section 363(m) of the Bankruptcy Code**

49.     Under section 363(m) of the Bankruptcy Code, a good-faith purchaser is one who buys assets for value, in good faith, and without notice of adverse claims.  *See In re Abbotts Dairies*

*of Pa., Inc.*, 788 F.2d at 147; *see also, In re Mark Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 9 (1st Cir. 1993); *In re Temtechco, Inc.*, 1998 WL 887256, at *5 (D. Del. 1998); *In re Congoleum Corp.*, 2007 WL 1428477, at *2 (Bankr. D.N.J. May 11, 2007). Any Sale will be result of a robust, intensive postpetition sale process run by the Debtor with the Investment Banker's assistance, and any resulting Definitive Purchase Agreement will be the result of extensive, arm's-length negotiations, with both parties separately represented by independent advisors, which the Debtor and any purchaser will also show through additional evidence submitted in connection with the proposed Sale.

50.     The proposed Bidding Procedures seek to establish a process which will help market the Assets in an efficient and effective fashion. The Debtor diligently formulated the Bidding Procedures to ensure an open and fair process. The Bidding Procedures set forth a targeted Sale Process that will be run by the Investment Banker, and the Bidding Procedures permit Bids for the Assets. Under the Bidding Procedures, the Debtor will consider all Qualified Bids to ensure an arms'-length, good-faith sale process.

51.     Accordingly, the Debtor requests that the Sale Order includes a provision that the Successful Bidder for the Assets is a "good faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code. The Debtor maintains that providing the Successful Bidder with such protection will ensure that the maximum price will be received by the Debtor for the Assets.

**E.      The Stalking Horse Bidder Provisions are Fair and Reasonable and Should be Approved**

52.     The Debtor is also seeking authority to designate a Stalking Horse Bidder and, in connection therewith, to offer Bid Protections to such Stalking Horse Bidder. Bid Protections would be offered only with the consent of the Consultation Parties. Debtors customarily use stalking horse bidders, a bidder who is "an initial bidder whose due diligence and research serve

to encourage future bidders, and whose bid sets a floor for subsequent bidding," to maximize the value of estate assets at auction. *See In re Interforum Holding LLC*, 2011 WL 2671254, at *1 n.1 (E.D. Wis. July 7, 2011) (stalking horse bidders "establish a framework for competitive bidding and facilitat[ing] a realization of that value"). The offering of Bid Protections to induce stalking horse bidders to provide these benefits has become an established practice in chapter 11 cases.

53.     Courts have made clear that a debtor's business judgment is entitled to substantial deference to the procedures to be used in selling estate assets. *See, e.g.*, *In re Culp*, 550 B.R. 683, 697 (D. Del. 2015) ("'In determining whether to authorize use, sale or lease of property of the estate under Section 363, courts require the [Debtor] to show that a sound business purpose justifies such actions.' If the [Debtor's] decision evidences a sound business purpose, then the Bankruptcy Court should approve the sale." (*quoting In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999)); *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification'" (internal citations omitted)); *see also Integrated Resources*, 147 B.R. at 656–57 (noting that bidding procedures that have been negotiated by a trustee are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid"). With respect to the granting of bid protections, the Third Circuit has held that there is no "compelling justification for treating an application for a break-up fee and expenses under § 503(b) differently from other applications for administrative expenses under the same provision." *Reliant Energy Channelview LP* v. *Kelson Channelview LLC* (*In re Reliant Energy Channelview LP*), 594 F.3d 200, 206 (3d Cir. 2010) (citing *Calpine Corp.* v. *O'Brien Env't Energy, Inc.* (*In re O'Brien Env't Energy, Inc.*), 181 F.3d 527 (3d Cir. 1999)).

54. Therefore, the Third Circuit has ruled that bid protections must meet the standard in the administrative expense provisions of Bankruptcy Code section 503(b), which is generally satisfied if such bid protections provide some benefit to the debtor's estate. *See In re Energy Future Holdings Corp.*, 904 F.3d 298, 314 (3rd Cir. 2018); *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d at 533. Benefits to the debtor's estate may be found if "assurance of a break-up fee promoted more competitive bidding, such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited" and where the availability of the break-up fees and expenses "were to induce a bidder to research the value of the debtor and convert that value to a dollar figure on which other bidders can rely . . . increasing the likelihood that the price at which the debtor is sold will reflect its true worth." *Id.* at 537. The Bid Protections contemplated herein may be necessary to induce parties to act as a Stalking Horse Bidder.

55. A Stalking Horse Bid would help ensure the continuation of the Debtor's business and establish a substantial "baseline" for a thorough postpetition auction. Such Stalking Horse Bid may further contemplate the employment of some or all of the Debtor's employees or contemplate the assumption of some or substantially all of the Debtor's Contracts. In consideration of the foregoing, the Debtor submits that the Court should authorize the Debtor to offer Bid Protections under sections 503(b), 507(a)(2), and 507(b), which protections will be only offered with the consent of the Consultation Parties.

**F.      Assumption and Assignment of Executory Contracts and Unexpired Leases Should be Authorized**

56. Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or [unexpired] lease of the debtor." 11 U.S.C. § 365(a). Courts use the business judgment standard to determine whether to approve a debtor's decision to assume or reject an executory contract or unexpired

lease. *See, e.g.*, *In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (stating that the assumption or rejection of a lease "will be a matter of business judgment by the bankruptcy court"); *In re HQ Glob. Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (finding that a debtor's decision to assume or reject an executory contract is governed by the "business judgment" standard). The business judgment test "requires only that the trustee [or debtor in possession] demonstrate that [assumption or] rejection of the contract will benefit the estate." *Wheeling-Pittsburgh Steel Corp.* v. *West Penn Power Co.* (*In re Wheeling-Pittsburgh Steel Corp.*), 72 B.R. 845, 846 (Bankr. W.D. Pa. 1987) *quoting In re Stable Mews Assoc., Inc.*, 41 B.R. 594, 596 (Bankr. S.D.N.Y. 1984). A more exacting scrutiny would harm the estate through increased costs and "would slow the administration of a debtor's estate, . . . interfere with the Bankruptcy Code's provision for private control of administration of the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co.* v. *Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

57. Additionally, section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers in the administration of a case under title 11. Under section 105(a) of the Bankruptcy Code, a court may issue orders or decrees that help preserve or protect the value of a debtor's assets. *See, e.g.*, *In re Chinichian*, 784 F.2d 1440, 1443 ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code.").

58. The assumption and assignment of Contracts, as designated by a Stalking Horse Bidder or other Successful Bidder, is crucial to the Debtor's ability to obtain the best value in connection with the Sale and falls well within the reasonable exercise of the Debtor's business judgment. Under section 365(b)(1) of the Bankruptcy Code, for a debtor to assume an executory

contract, it must "cure, or provide adequate assurance that the debtor will promptly cure," any default which is required to be cured, including compensating or providing adequate assurance of prompt compensation for any "actual pecuniary loss" relating to such default. 11 U.S.C. § 365(b)(1). Once an executory contract is assumed, the trustee or debtor in possession may elect to assign it. *See In re Rickel Home Centers, Inc.*, 209 F.3d 291, 299 (3d Cir. 2000) ("The Code generally favors free assignability as a means to maximize the value of the debtor's estate"). Section 365(f) of the Bankruptcy Code provides that the "trustee may assign an executory contract … only if the trustee assumes such contract … and adequate assurance of future performance is provided." 11 U.S.C. § 365(f)(2). The meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but should be given "practical, pragmatic construction." *Carlisle Homes, Inc.* v. *Arrari* (*In re Carlisle Homes, Inc.*), 103 B.R. 524, 538 (Bankr. D.N.J. 1989). Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned.

59.     The Debtor submits that the Assumption and Assignment Procedures are appropriate and reasonably tailored to provide Non-Debtor Counterparties with adequate notice of the potential assumption and assignment of their Contracts, as well as proposed Cure Amounts, if any. Non-Debtor Counterparties will have the opportunity to object to the Cure Amounts listed in the Cure Notice, or to the assumption and assignment of their Contracts on other grounds, including concerns about inadequate assurance of future performance. The Assumption and Assignment Procedures also provide that, in the event an objection is not resolved, the Court will determine the disputed issues. Accordingly, the Debtor submits that implementation of the

Assumption and Assignment Procedures is appropriate under the facts and circumstances of the Chapter 11 Case and the proposed Sale.

60.     For all these reasons, the Debtor submits that the assumption and assignment of the Debtor's Contracts to a Stalking Horse Bidder or other Successful Bidder should be approved as an exercise of the Debtor's sound business judgment.

### G.     The Form, Manner, and Extent of Notice of the Motion and the Proposed Sale are Appropriate and Adequate Under the Circumstances

61.     The Debtor will serve the Sale Notice and the Cure Notice and propose to publish a form of the Sale Notice on the Debtor's website maintained by Reliable, the Debtor's proposed claims and noticing agent,[9] in accordance with the Bidding Procedures Order.  The notice of the proposed Sale to be provided by the Debtor as set forth herein sufficiently describes the terms and conditions of the proposed Sale.

1.     Several sections of the Bankruptcy Code and Bankruptcy Rules dictate the sufficiency of notice and adequacy of service.  As discussed below, the content and manner of service of this Motion and the related notices satisfy all such requirements:

(a)     Section 363 Notice – section 363 of the Bankruptcy Code provides that a trustee may sell property "after notice and hearing."  Under Section 102(1) of the Bankruptcy Code, the phrase "after notice and hearing" means "notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances."  11 U.S.C. § 102(1)(A).  As discussed above, creditors will be provided notice of the salient details about this motion and the Sale Hearing through service of this Motion, the Sale Notice, and the Cure Notice, each as described above. Notice is therefore sufficient under section 363 of the Bankruptcy Code.

(b)     Bankruptcy Rule 2002 – Bankruptcy Rule 2002 requires twenty-one days' notice of the proposed sale of property other than in the ordinary course of business.  In addition, Bankruptcy Rule 2002 provides that notice of a sale shall "include the

---

[9]     The Debtor plans to soon file the *Debtor's Application for an Order, Pursuant to 28 U.S.C. § 156(C), Bankruptcy Rule 2002(F), and Local Rule 2002-1(E), Appointing Reliable as Claims and Noticing Agent, Nunc Pro Tunc to January 31, 2025,* which will be pending before this Court at the time of the hearing on this Motion.

time and place of any public sale, the terms and conditions of any private sale and the time fixed for filing objections." Fed. R. Bankr. P. 2002. As discussed above, the notice of this Motion that has been and will be provided by the Debtor satisfies each of these requirements.

(c) Bankruptcy Rules 6004 and 6006 – Bankruptcy Rule 6004 requires that notice of sales of property out of the ordinary course of business complies with Bankruptcy Rule 2002. As discussed above, the Debtor has complied with Bankruptcy Rule 2002. Bankruptcy Rule 6006 requires notice of a motion to assume and assign an executory contract or unexpired lease to be served on the non-Debtor counterparty to such contract or lease, as well as on other parties in interest as the Court may direct. The Sale Notice and the Cure Notices have been or will be served on the Non-Debtor Counterparties to any assigned contracts, thereby satisfying this requirement.

(d) Procedural Due Process – The notices of this Motion and the Sale that are being provided as described above and the Bidding Procedures Order, are "reasonably calculated" to apprise interested parties of the pendency of the matter and to allow them to object. *See Mullane* v. *Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). Parties in interest have been and should be found to have been afforded adequate notice of this Motion, the proposed Sale, the Bidding Procedures, and the other relief requested herein.

2. The Debtor submits that the notice it intends to provide as outlined above with respect to the proposed Sale, the Bidding Procedures, and the Cure Amounts, as applicable, is reasonable and appropriate and constitutes good and adequate notice of the Sale of the Assets and the procedures and proceedings related thereto and therefore should be approved by this Court.

**H.** **The Stay of the Sale Order Should be Waived**

3. Under Bankruptcy Rules 6004(h) and 6006(d), an order authorizing the sale of property or the assignment of an unexpired lease is stayed for fourteen days after the entry of an order unless the Court orders otherwise.

4. The Debtor requests that the Court order that such stay does not apply to the Sale Order entered with respect to the Sale of the Assets and assignment and assumption of the Contracts.

26

## **NOTICE**

5.      The Debtor will provide notice of this Motion to (a) the Office of the United States Trustee for the District of Delaware; (b) counsel for the Committee; (c) counsel to EagleBank, (d) counsel to Standvast, (e) the Prepetition Noteholders, (f) the United States Attorney's office for the District of Delaware, (g) the Internal Revenue Service, (h) the United States Securities and Exchange Commission, (i) the state attorneys general for states in which the Debtor conducts business, (j) all creditors that have filed a UCC-1 statement against the Debtor, and (k) all other parties entitled to notice pursuant to Bankruptcy Rule 2002.

6.      Notice of this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).  The Debtor submits that, given the relief requested, no other or further notice need be given.

## CONCLUSION

**WHEREFORE,** the Debtor respectfully requests that the Court grant the relief requested herein and such other and further relief as the Court deems appropriate under the circumstances.

Dated: February 7, 2025

Respectfully submitted,

**GOLDSTEIN & MCCLINTOCK LLLP**

By: */s/ Maria Aprile Sawczuk*
Maria Aprile Sawczuk, Esq. (Bar ID 3320)
501 Silverside Road, Suite 65
Wilmington, DE 19809
Telephone: (302) 444-6710
marias@goldmclaw.com

-and-

Harley J. Goldstein, Esq. (admitted *pro hac vice*)
Ainsley G. Moloney, Esq. (admitted *pro hac vice*)
Joshua M. Grenard, Esq. (admitted *pro hac vice*)
William H. Thomas, Esq. (admitted *pro hac vice*)
111 W. Washington Street, Suite 1221
Chicago, IL 60602
Telephone: (312) 337-7700
harleyg@goldmclaw.com
ainsleym@goldmclaw.com
joshuag@goldmclaw.com
willt@goldmclaw.com

*Attorneys for the Debtor and Debtor-in-Possession*