# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DORMIFY, INC.,[1] | ) | Case No. 24-12634 (TMH) |
| | ) | |
| Debtor. | ) | Related to Docket No. 115 |
| | ) | |

**ORDER (I) (A) APPROVING BIDDING
PROCEDURES FOR THE SALE OF THE DEBTOR'S
ASSETS AND THE FORM AND MANNER OF NOTICE RELATED THERETO, (B)
AUTHORIZING THE DEBTOR TO SELECT A STALKING HORSE BIDDER AND
ENTER INTO A PURCHASE AGREEMENT WITH SUCH BIDDER PROVIDING FOR
CERTAIN BID PROTECTIONS, AND (C) APPROVING PROCEDURES FOR
THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES; (II) SCHEDULING THE AUCTION AND THE HEARING TO
CONSIDER APPROVAL OF THE SALE, AND (III) GRANTING RELATED RELIEF**

Upon the Debtor's motion (the "*Motion*") for entry of two orders:[2]

(I) An order (this "*Bidding Procedures Order*"):

    (a) approving the bidding procedures (the "*Bidding Procedures*") in substantially the form attached as **Exhibit 1** hereto to govern any sale (the "*Sale*") of all or substantially all of the Debtor's assets (the "*Assets*"), pursuant to section 363 of the Bankruptcy Code;

    (b) establishing the following dates and deadlines in connection with the Bidding Procedures:

- <u>Stalking Horse Designation Deadline</u>: March 3, 2025 at 4:00 p.m. (prevailing Eastern Time);

- <u>Bid Deadline</u>: April 18, 2025 at 4:00 p.m. (prevailing Eastern Time), as the deadline by which all binding bids must be received by the Debtor pursuant to the Bidding Procedures (the "*Bid Deadline*");

---

[1] The Debtor in this chapter 11 case, along with the last four digits of the Debtor's federal tax identification number, is: Dormify, Inc. (5123). The location of the Debtor's corporate headquarters is 286 5th Avenue, Floor 11, New York, NY 10001.

[2] Capitalized terms used but not defined herein have the meaning ascribed to them in the Motion or the Bidding Procedures.

- Auction (if necessary): April 21, 2025 at 10:00 a.m. (prevailing Eastern Time) as the date by which the Debtor may conduct the Auction (as defined below);

- Sale Hearing: April 28, 2025 at 11:00 a.m. (prevailing Eastern Time), or as soon thereafter as the Court's calendar permits, as the date for a hearing to approve the Sale (if any) of the Assets (the "*Sale Hearing*"); and

- Sale Closing: April 30, 2025 as the date by which the Sale must be consummated (the "*Sale Closing Deadline*").

(c) approving the form and manner of notice of the Sale and the Bid Deadline, substantially in the form attached as **Exhibit 2** hereto (the "*Sale Notice*");

(d) authorizing the Debtor and its Investment Banker, in consultation with the DIP Lender and the Committee (each as defined below, and collectively, the "*Consultation Parties*"),[3] in accordance with the terms of the Bidding Procedures, to select a stalking horse bidder (a "*Stalking Horse Bidder*") and enter into a purchase agreement with any such Stalking Horse Bidder (the "*Stalking Horse Agreement*"), which may provide for certain bid protections, including a break-up fee, with the consent of the Consultation Parties;

(e) authorizing the Debtor and its Investment Banker to run the marketing and sale process of the Assets (the "*Sale Process*");

(f) approving (i) procedures (the "*Assumption and Assignment Procedures*") for the assumption and assignment of certain of the Debtor's executory contracts and unexpired leases (the "*Contracts*") and (ii) the form and manner of notice of assumption and assignment of Contracts, including the form and manner of notice of proposed cure amounts (the "*Cure Amounts*") attached hereto as **Exhibit 3**;

(g) scheduling the auction (the "*Auction*"), if any, and the Sale Hearing and approving the form and manner of notice thereof; and

(a) granting related relief.

---

[3] If any of the Debtor's prepetition noteholders who participate as the DIP Lender submit a Bid for the Assets, such noteholders will not be a Consultation Party. The other prepetition noteholders who make up the DIP Lender will maintain their consultation rights as a Consultation Party, provided that the party that submitted a Bid, and any of its affiliates or related parties will be excluded from any discussions or deliberations regarding a transaction involving the Assets, and the DIP Lender shall not provide any confidential information regarding the Assets or otherwise involving the Sale Process to the bidding DIP Lender.

2

(II)   Entry of an order (the "*Sale Order*"):

    (a)   authorizing and approving the Sale of the Assets free and clear of liens, claims, encumbrances, and other interests on the terms set forth in a definitive purchase agreement (the "*Definitive Purchase Agreement*"), in the proposed form that will be filed by the Debtor in advance of the hearing to consider the Sale Order;

    (b)   authorizing and approving the assumption and assignment of certain Contracts in connection therewith; and

    (c)   granting related relief.

And upon the Zuckerman Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion is in the best interests of the Debtor's estate, its creditors, and other parties in interest; and this Court having found that the Debtor's notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "*Hearing*"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor:

**IT IS HEREBY FOUND AND DETERMINED THAT:**[4]

---

[4] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of

A. The Bidding Procedures attached as **<u>Exhibit 1</u>** are fair, reasonable, and appropriate, and are designed to maximize the value to be achieved from the Sale.

B. The Assumption and Assignment Procedures provided for herein are fair, reasonable, and appropriate and consistent with the provisions of section 365 of the Bankruptcy Code.

C. The Debtor has articulated good and sufficient business reasons for this Court to approve: (i) the Bidding Procedures, including all related deadlines, the Auction, and Sale Hearing with respect to the proposed Sale and the form and manner of notices related thereto; (ii) the establishment of procedures to assume and assign the Contracts and fix the Cure Amounts and the form and manner of notices related thereto; and (iii) the Debtor's authorization, in consultation with the Consultation Parties, to select a Stalking Horse Bidder and offer certain bid protections with the consent of the Consultation Parties, which bid shall be subject to higher or otherwise better offers as set forth in the Bidding Procedures.

D. The form and manner of service of the Sale Notice attached as **<u>Exhibit 2</u>** hereto is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the Sale, the Bidding Procedures, and the Assumption and Assignment Procedures to be employed in connection therewith, including, without limitation: (i) the date, time, and place of the Auction (if held); (ii) the Bidding Procedures and the dates and deadlines related thereto; (iii) the objection deadline for the Sale and the date, time, and place of the Sale Hearing; (iv) the identification of the Assets to be sold; and (v) representations describing the Sale as being free and clear of all liens, claims, interests, and other encumbrances (collectively,

---

fact, they are adopted as such.

"*Interests*"), with all such Interests attaching with the same validity and priority to the proceeds of the Sale; and no other or further notice of the Sale shall be required.

E. The Cure Notice attached hereto as **Exhibit 3** is appropriate and reasonably calculated to provide each non-debtor party to any Contracts (such parties, the "*Non-Debtor Counterparties*") with proper notice of the potential assumption and assignment of the applicable Contract, the proposed Cure Amount, and the Assumption and Assignment Procedures. The inclusion of any particular contract or lease on a Cure Notice shall not be deemed to be an admission that such contract or lease is an executory contract or unexpired lease of property or require or guarantee that such contract or lease will be assumed and/or assigned, and all rights of the Debtor with respect to the foregoing are reserved.

F. No further notice beyond that described in the foregoing paragraphs is required in connection with the Sale.

G. The entry of this Bidding Procedures Order is in the best interests of the Debtor, its estate, its creditors, and other parties-in-interest.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1. The Motion is granted as set forth herein.

2. All objections to the Motion or the relief provided herein, as they pertain to the entry of this Bidding Procedures Order, that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled and denied on the merits.

**The Bidding Procedures**

3. The Bidding Procedures are fully incorporated herein and approved in their entirety. All dates and deadlines set forth in the Bidding Procedures are hereby established, subject to the terms of the Bidding Procedures. The Bidding Procedures shall govern the submission,

receipt, and analysis of all bids relating to the Sale under section 363 of the Bankruptcy Code. The Debtor, in consultation with the Consultation Parties, is authorized to schedule the Auction in connection with the Bidding Procedures.

## **Assumption and Assignment Procedures**

4. The following Assumption and Assignment Procedures shall govern the assumption and assignment of the Contracts in connection with the Sale, and any objections related thereto:

   a. The Debtor shall file with this Court and serve the Cure Notice on each Non-Debtor Counterparty to each of the Contracts no later than March 3, 2025 via overnight mail or email, if available, to the notice parties listed in the applicable Contract, and any counsel of record in this Chapter 11 Case.

   b. In the event that the Debtor identifies any Non-Debtor Counterparties that were not served with the Cure Notice, the Debtor may subsequently serve (by overnight mail) such Non-Debtor Counterparty with a Cure Notice, and the following procedures will nevertheless apply to such Non-Debtor Counterparty; *provided*, *however*, absent further order of this Court, the Cure/Assignment Objection Deadline (defined below) with respect to such Non-Debtor Counterparty shall be 4:00 p.m. (prevailing Eastern Time) on the date that is seven (7) days following service of the Cure Notice.

   c. The Cure Notice served on each Non-Debtor Counterparty shall: (i) identify each Contract; (ii) list the Cure Amount the Debtor believes is required to be paid pursuant to the Bankruptcy Code in order to effectuate the assignment of the Contract; (iii) include a statement that the assumption and assignment of such Contract is neither required nor guaranteed; and (iv) inform such Non-Debtor Counterparty of the requirement to file any Cure Objections (defined below) by the Cure Objection Deadline (defined below). Service of a Cure Notice does not (x) constitute, and shall not be deemed, an admission that a particular Contract is an executory contract or unexpired lease of property, or (y) confirm that the Debtor is required to assume and/or assign such Contract.

   d. Objections (a "*Cure/Assignment Objection*"), if any, to one or more of (i) the proposed Cure Amount, (ii) the ability of a Stalking Horse Bidder, if any, to provide adequate assurance of future performance, and (iii) the proposed assumption, assignment, and/or transfer of its contract(s) or lease(s) (including the transfer of any related rights or benefits thereunder), other than objections that relate specifically to the identity of any Successful Bidder (other than the Stalking Horse Bidder, if any), must: (x) be in writing; (y) state with specificity the nature of such objection, including the amount of Cure Amount in dispute; and (z) be filed with

the Court and properly served on the Notice Parties to be received no later than 4:00 p.m. (prevailing Eastern Time) on March 17, 2025 (the "*Cure/Assignment Objection Deadline*"), subject to subparagraph (b) above; *provided*, that if the Successful Bidder is a party other than the Stalking Horse Bidder, if any, objections of Non-Debtor Counterparties related to the identity of such other Successful Bidder must: (x) be in writing; (y) state with specificity the nature of such objection; and (z) be filed with the Court and properly served on the Notice Parties to be actually received no later than the Sale Objection Deadline (as defined below).

e. Any Non-Debtor Counterparty to a Contract that fails to timely file and properly serve a Cure/Assignment Objection, as provided herein, will: (i) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Contract in the event it is assumed and/or assigned by the Debtor, and the Debtor and the assignee of the Contract shall be entitled to rely solely upon the Cure Amounts scheduled on the Cure Notice; and (ii) be deemed to have consented to the assumption, assignment, and/or transfer of such Contract (including the transfer of any related rights and benefits thereunder) to the assignee and shall be forever barred and estopped from objecting to the assumption or assignment of such Contracts to the assignee or asserting or claiming against the Debtor or the assignee that any additional pre-assignment amounts are due or defaults exist, or conditions to assumption, assignment, and/or transfer must be satisfied under such Contract, that any related right or benefit under such Contract cannot or will not be available to the assignee, or that the assignee failed to provide such Non-Debtor Counterparty with adequate assurance of future performance.

f. If a Non-Debtor Counterparty files an objection satisfying the requirements of these Assumption and Assignment Procedures that is not consensually resolved by the Sale Hearing, such unresolved objection shall not be considered at the Sale Hearing; and instead shall be considered at a subsequent hearing on at least seven (7) days' notice to the applicable Non-Debtor Counterparty, *provided*, *however*, any Contract that is the subject of a Cure Objection with respect solely to the amount of the Cure Amount may be assumed and assigned prior to resolution of such objection, so long as the Debtor or assignee, as applicable, (i) pay any undisputed Cure Amount on or about the date the Sale is consummated and (ii) appropriately reserve funding for the disputed portion of the Cure Amount pending resolution of the dispute.

g. The Debtor's assumption and/or assignment of a Contract is subject to approval by this Court and consummation of the Sale. Absent entry of a Sale Order approving the assumption and/or assignment of the Contracts and consummation of the Sale, the Contracts shall be deemed neither assumed nor assigned and shall in all respects be subject to subsequent assumption or rejection by the Debtor.

h. The Debtor may only assume and assign contracts and non-residential real property leases to the extent such are deemed executory contracts and unexpired leases under section 365 of the Bankruptcy Code.

**Notice Procedures**

5. The Sale Notice in the form attached hereto as **Exhibit 2** is approved, and the Debtor is authorized to make non-substantive or immaterial changes to the Sale Notice or to fill in missing information, in each case to the extent not inconsistent with this Bidding Procedures Order, prior to service of the Sale Notice.

6. One business day after entry of this Bidding Procedures Order, the Debtor will (i) serve the Sale Notice on (a) all entities known to have expressed a *bona fide* interest in a transaction with respect to the Assets; (b) all entities known to have asserted any lien, claim, or encumbrance in or upon any assets comprising the Assets; (c) all federal, state, and local environmental, regulatory, or taxing authorities or recording offices which have a reasonably known interest in the relief requested by this Motion; (d) known counterparties to any unexpired leases or executory contracts that could be assumed and assigned to a Successful Bidder; (e) the Office of the United States Trustee for the District of Delaware; (f) all taxing authorities having jurisdiction over any of the Assets, including the Internal Revenue Service; (g) the Securities and Exchange Commission; (h) the Offices of the United States Attorney for the District of Delaware; (i) counsel to the DIP Lender; (j) counsel to the Committee; and (k) all persons and entities that have filed a request for service of filings in this Chapter 11 Case under Bankruptcy Rule 2002 (collectively, the "*Notice Parties*") and (ii) cause a form of the Sale Notice and the Bidding Procedures Order to be posted on the Debtor's website maintained by Reliable, the Debtor's claims and noticing agent.

7. No other or further notice of the Sale, the Auction, the Sale Hearing, or the Sale Objection Deadline shall be required. Service of the Sale Notice as set forth herein is deemed to satisfy the notice requirements under Bankruptcy Rules 2002, 6004, and 6006, as well as Local

Rule 6004-1, and to otherwise comply in all respects with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

8. The Debtor shall file a notice on this Court's docket identifying the Successful Bidder and any Backup Bidder by **4:00 p.m. (prevailing Eastern Time) on April 23, 2025**.

9. The form of Cure Notice attached hereto as **Exhibit 3** and the Assumption and Assignment Procedures set forth herein are approved and are deemed to be sufficient to provide effective notice to the Non-Debtor Counterparties of the Debtor's intent to potentially assume and assign some or all of the Contracts and the Debtor's proposed Cure Amounts. Such notice is deemed to satisfy the notice requirements under Bankruptcy Rules 2002, 6004, and 6006, as well as Local Rule 6004-1, and to otherwise comply in all respects with applicable provisions of the Bankruptcy Code, Bankruptcy Rules, and Local Rules.

**Auction and Sale Hearing**

10. Bid Deadline. As further described in the Bidding Procedures, the deadline for Bids is **4:00 p.m. (prevailing Eastern Time) on April 18, 2025**. No Bid shall be deemed to be a Qualified Bid unless such Bid meets the requirements set forth in the Bidding Procedures.

11. Auction; Cancellation of Auction. Depending on the Bids received in accordance with the Bidding Procedures, the Debtor may conduct an Auction for the proposed Sale. If at least one Qualified Bid is received in accordance with the Bidding Procedures with regard to the Assets, the Debtor shall be permitted to hold the Auction in accordance with the Bidding Procedures, which shall take place on **April 21, 2025 at 10:00 a.m. (prevailing Eastern Time),** at such place, including by remote video, as the Debtor shall designate, in consultation with the Consultation Parties. In the event that the Debtor, in consultation with the Consultation Parties, designate a later time or place for the Auction, they shall (i) notify all Qualified Bidders (as defined in the Bidding

Procedures) who have submitted Qualified Bids, and (ii) file notice of such change with this Court. Only (a) Qualified Bidders (including the Stalking Horse Bidder, if any) and their legal and financial advisors, (b) the Consultation Parties, and (c) actual creditors of the Debtor (provided that they give at least 48 hours' notice to the Debtor's counsel of their intention to attend an Auction via email to Goldstein & McClintock LLLP, Attn: Maria Aprile Sawczuk (marias@goldmclaw) and Joshua Grenard (joshuag@goldmclaw.com)), shall be entitled to attend an Auction. In all circumstances, a representative of the United States Trustee from the District of Delaware shall be entitled to attend and receive such notices regarding the Auction.

12. In the event that (i) the Debtor, in consultation with the Consultation Parties, designate a Stalking Horse Bidder and enter into a Stalking Horse Agreement, and no Qualified Bids other than the Stalking Horse Bid are received in accordance with the Bidding Procedures, or (ii) in the absence of a Stalking Horse Bidder, only one Qualified Bid is received, then the Debtor may decide, in the Debtor's reasonable business judgment and in consultation with the Consultation Parties, to cancel the Auction and designate the Stalking Horse Bid or Qualified Bid as the Successful Bid (as defined in the Bidding Procedures) and pursue entry of an order approving a Sale to the Stalking Horse Bidder pursuant to the Stalking Horse Agreement.

13. If the Auction is cancelled, the Debtor shall promptly file a notice cancelling the Auction and designating the Stalking Horse Bid or Qualified Bid as the Successful Bid, if applicable, no later than April 23, 2025 at 4:00 p.m. (ET).

14. Each Qualified Bidder participating in the Auction will be required to confirm on the record at the Auction, that (i) it has not engaged in any collusion with respect to the Bidding Procedures and the Auction, (ii) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder or Backup Bidder, and (iii) it agrees to serve as

the Backup Bidder if its Qualified Bid is the next highest or otherwise best bid after the Successful Bid.

15. <u>Notice for Non-Debtor Counterparties</u>. As soon as reasonably practicable after closing the Auction, if any, and in any event, no later than 4:00 p.m. (ET) on April 23, 2025, the Debtor shall cause a notice of Successful Bid and Successful Bidder, and the Qualified Bid Documents for the Successful Bid and Backup Bid to be filed with the Court.

16. <u>Sale Order.</u> The Debtor shall file the form of proposed Sale Order with the Court no later than April 23, 2025 at 4:00 p.m. (ET).

17. <u>Sale Objection Deadline</u>. The Sale Objection Deadline is **4:00 p.m. (prevailing Eastern Time) on April 24, 2025**. A Sale Objection, including but not limited to any objection to (i) the conduct at the Auction (if held); (ii) the form of Sale Order; or (iii) solely with respect to the Non-Debtor Counterparties to the Contracts, the specific identity of and adequate assurance of future performance provided by the Successful Bidder (only if such Successful Bidder is not a Stalking Horse Bidder), must be filed with this Court and served in the manner set forth below so as to be actually received no later than the Sale Objection Deadline.

18. <u>Sale Hearing</u>. The Sale Hearing shall take place on **April 28, 2025 at 11:00 a.m. (prevailing Eastern Time)**. At the Sale Hearing, the Debtor will seek the entry of the Sale Order approving and authorizing the Sale to the Successful Bidder. The Sale Hearing (or any portion thereof) may be adjourned by this Court or the Debtor, in consultation with the Consultation Parties, from time to time without further notice other than by announcement in open court or through the filing of a notice or other document on this Court's docket.

**Objection Procedures**

19. Any party that seeks to object to the proposed Sale or related relief must file a formal written objection that complies with the objection procedures set forth herein.

20. Objections, if any, must be: (i) in writing; (ii) signed by counsel or attested to by the objecting party; (iii) in conformity with the applicable provisions of the Bankruptcy Rules and the Local Rules; (iv) state with particularity the legal and factual basis for the objection and the specific grounds therefor; (v) be filed with this Court; and (vi) served on the Debtor and the Notice Parties, in each case so as to be received no later than the Cure/Assignment Objection Deadline or Sale Objection Deadline (collectively, the "*Deadlines*"), as applicable.

21. Failure to file an objection on or before the applicable Deadline (i) shall forever bar the assertion, whether at any Sale Hearing or thereafter, of any objection to the Motion, to entry of the Sale Order, and/or to the consummation and performance of the Sale with a Successful Bidder, and (ii) for purposes of section 363(f)(2) of the Bankruptcy Code, shall be deemed to be "consent" to entry of the Sale Order and consummation of the Sale related thereto free and clear of any interest in the Assets thereof as contemplated by the Sale.

**Approval of Designation of Stalking Horse Bidder, Bid Protections and Backup Bidder**

22. Pursuant to the Bidding Procedures, the Debtor, in consultation with the Consultation Parties, is authorized, but not directed, to select a bidder to act as the Stalking Horse Bidder for the Assets and enter into a Stalking Horse Agreement with such Stalking Horse Bidder.

23. In the event that the Debtor enters into a Stalking Horse Agreement, within two (2) business day of entering into such agreement, the Debtor shall file with the Court and serve on the Notice Parties, a notice (the "*Stalking Horse Notice*") which shall include, among other things: (i) the identification of the Stalking Horse Bidder; (ii) a copy of the Stalking Horse Agreement; (iii)

the amount of the deposit paid by the Stalking Horse Bidder; and (iv) if Bid Protections (defined below) are included in the Stalking Horse Agreement, the additional documents and information required by paragraph 25. However, for the avoidance of doubt, any such Stalking Horse Agreement shall be filed no later than April 10, 2025 (i.e., 14 days prior to the Sale Objection Deadline).

24. The Debtor is authorized, in connection with a Stalking Horse Agreement, to offer bid protections to a Stalking Horse Bidder with the consent of the Consultation Parties. Absent further order of the Court, any Stalking Horse Agreement shall limit a (i) Break-Up Fee of up to an aggregate of three percent (3%) of the total cash consideration offered for any Stalking Horse Bid and (b) Expense Reimbursement (together, the Break-Up Fee and the Expense Reimbursement shall be referred to as the "*Bid Protections*") actually incurred by a Stalking Horse Bidder in connection with its bid, not to exceed $50,000; *provided, however*, that no Break-Up Fee or Expense Reimbursement in any amount are being approved herein and any such approval shall be subject to further order of this Court as set forth herein.

25. Notwithstanding anything in the Bidding Procedures or the Bidding Procedures Order to the contrary, to the extent the Debtor, with the consent of the Consultation Parties, determines to offer Bid Protections to any Stalking Horse Bidder, the Debtor shall disclose such Bid Protections in the Stalking Horse Notice. The Stalking Horse Bidder Notice, if filed, shall include an appropriate declaration in support of the proposed Bid Protections (the "*Bid Protections Declaration*") and a proposed form of order approving the Bid Protections (the "*Bid Protections Order*"). Any objection to (i) the Bid Protections set forth in the Stalking Horse Notice and Bid Protections Declaration or (ii) the form of the Bid Protections Order (a "*Bid Protections Objection*") shall be filed no later than three days after the Bid Protections Declaration is filed.

The Stalking Horse Notice and Bid Protections Declaration shall set forth the reasons the Debtor believes the Bid Protections satisfy the requirements of section 503(b) of the Bankruptcy Code. For the avoidance of doubt, nothing in the Bidding Procedures Order is shifting the Debtor's burden of proof that the Bid Protections are actually necessary to preserve the value of the estate pursuant to section 503(b) of the Bankruptcy Code. If a timely Bid Protections Objection is filed, the Debtor will schedule a hearing in consultation with any objecting parties, the Consultation Parties, and the Court. Absent any timely Bid Protections Objection, the Court may enter the Bid Protections Order without further hearing.

26. Any Bid Protections incurred by the Debtor will be payable to the Stalking Horse Bidder, in the event the Stalking Horse Bidder is not a successful bidder, solely from the proceeds of the cash portion of the purchase price of the successful bid upon Closing.

### Other Relief Granted

27. Absent a subsequent order of this Court to the contrary, this Bidding Procedures Order shall be binding in all respects upon any trustees, examiners, "responsible persons," or other fiduciaries appointed in the Chapter 11 Case or upon a conversion to chapter 7 under the Bankruptcy Code.

28. Nothing herein shall be deemed to or constitute the assumption, assignment, assumption and assignment, or rejection of any executory contract or unexpired lease.

29. Notwithstanding any provision in the Bankruptcy Rules to the contrary, the stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are waived and this Bidding Procedures Order shall be effective immediately and enforceable upon its entry.

30. Notwithstanding anything to the contrary in this Bidding Procedures Order, the Bidding Procedures, or the Assumption and Assignment Procedures, the Debtor, with the consent

of the Consultation Parties, may extend or seek an extension from this Court, the deadlines set forth in this Bidding Procedures Order or the Bidding Procedures, including, but not limited to, the Bid Deadline (as this term is defined in the Bidding Procedures).

31. All persons or entities (whether or not a Qualified Bidder) that participate in the bidding process will be deemed to have knowingly and voluntarily (i) consented to the entry of a final order by this Court in connection with the Motion to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution and (ii) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

32. In the event of any conflict between this Bidding Procedures Order and the Motion and/or the Bidding Procedures, this Bidding Procedures Order shall govern in all respects.

33. This Court shall retain exclusive jurisdiction over any matters related to or arising from the implementation, interpretation, and enforcement of this Bidding Procedures Order.

**Dated: February 21st, 2025**
**Wilmington, Delaware**

**THOMAS M. HORAN**
**UNITED STATES BANKRUPTCY JUDGE**