# Exhibit 1

# Bidding Procedures

# BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL ASSETS OF DORMIFY, INC.

On November 18, 2024, Dormify, Inc. (the "*Debtor*" or the "*Company*") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "*Bankruptcy Code*"), in the United States Bankruptcy Court for the District of Delaware (the "*Court*").

On February [●], 2025, the Court entered the *Order (I)(a) Approving Bidding Procedures for the Sale of the Debtor's Assets and the Form and Manner of Notice Related Thereto, (b) Authorizing the Debtor to Select a Stalking Horse Bidder and Enter into a Purchase Agreement with Such Bidder Providing for Certain Bid Protections, and (c) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases; (II) Scheduling the Auction and the Hearing to Consider Approval of the Sale, and (III) Granting Related Relief* [D.I. [●]] (the "*Bidding Procedures Order*"), which authorized and/or approved, among other things, (a) procedures pursuant to which the Debtor is authorized to solicit and pursue (such procedures, the "*Bidding Procedures*") a sale of all or substantially all of the Debtor's assets (the "*Assets*") under section 363 of the Bankruptcy Code (the "*Sale*"), (b) the scheduling of a hearing to approve the Sale of the Assets, free and clear of any liens, claims, and other encumbrances (collectively, the "*Interests*") under section 363 of the Bankruptcy Code, and (c) procedures in connection with the assumption and assignment of any executory contracts or unexpired leases the Debtor seeks to have assumed and assigned in connection with a Sale. **All interested bidders should carefully read the Bidding Procedures Order and these Bidding Procedures in their entirety**.[1]

## I.     OVERVIEW

These Bidding Procedures set forth the process by which the Debtor is authorized to conduct a marketing process and, if necessary, an auction (an "*Auction*"), for the Sale. The Company owns and operates dormify.com, which was founded in July 2011 to provide a one-stop-shop online for furniture, bedding, and other home accessories for college students outfitting their dormitory rooms, as further described in the Zuckerman Declaration. The Company will consider bids for the purchase of all or substantially all of its Assets (a "*Bid*").

The Debtor reserves the right to modify these Bidding Procedures, in consultation with the Committee and the DIP Lender (the "*Consultation Parties*"),[2] including without limitation, to

---

[1]     All capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Bidding Procedures Order or the *Debtor's Motion for Orders (I)(a) Approving Bidding Procedures for the Sale of the Debtor's Assets and the Form and Manner of Notice Related Thereto, (b) Authorizing the Debtor to Select a Stalking Horse Bidder and Enter into a Purchase Agreement with Such Bidder Providing for Certain Bid Protections, and (c) Approving Procedures for the Assumption and Assignment of Executory Contracts and Unexpired Leases; (II) (a) Approving the Sale of the Debtor's Assets, Free and Clear of all Interests and (b) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (III) Granting Related Relief* [D.I. 115] (the "*Motion*"), as applicable.

[2]     The DIP Lender will not be a Consultation Party if it submits a Bid for the Assets pursuant to the Bidding Procedures. If any of the Debtor's prepetition noteholders who participate as the DIP Lender submit a Bid for the Assets, the other prepetition noteholders who make up the DIP Lender will maintain their consultation rights as a Consultation Party, provided that the party that submitted a Bid, and any of its affiliates or related parties will be excluded from any discussions or deliberations regarding a transaction

modify the requirements set forth herein or impose additional terms and conditions at any time to the extent it determines, in its reasonable business judgment, that doing so will best promote the goals of the bidding process, including during an Auction.

## II. KEY SALES PROCESS DATES

The Debtor and the Investment Banker shall assist interested parties in conducting their respective due diligence investigations and shall accept Bids until **April 18, 2025 at 4:00 p.m. (prevailing Eastern Time)** (the "*Bid Deadline*").

The other key dates for the marketing process are as follows:

| Event or Deadline | Date and Time[3] |
|---|---|
| Bidding Procedures Hearing | February 21, 2025 at 10:00 a.m. (prevailing Eastern Time) |
| Service and Publication of Sale Notice | 1 business day after entry of Bidding Procedures Order or as soon as reasonably practicable thereafter |
| Debtor's Deadline to File and Serve Cure Notices | March 3, 2025 |
| Cure/Assignment Objection Deadline | March 17, 2025 at 4:00 p.m. (prevailing Eastern Time) |
| Deadline to Designate Stalking Horse Bid | March 3, 2025[4] |
| Debtor's Deadline to File Stalking Horse Notice (if necessary) | 2 business days after entering into such agreement |
| Bid Deadline | April 18, 2025 at 4:00 p.m. (prevailing Eastern Time) |
| Determination of Qualified Bids | April 20, 2025 |
| Auction (if necessary) | April 21, 2025 at 10:00 a.m. (prevailing Eastern Time) at a place, including via remote video, to be announced.[5] |

---

involving the Assets, and the DIP Lender shall not provide any confidential information regarding the Assets or otherwise involving the Sale Process to the bidding DIP Lender.

[3] All dates and deadlines are subject to modification as may be agreed upon by the Debtor, the Committee and the DIP Lender.

[4] In all events, the Debtor will file any Stalking Horse agreement at least 14 days prior to the Sale Hearing (as such term is defined and described herein).

[5] If the Debtor decides to hold a live, in-person Auction, Qualified Bidders shall be able to submit Bids remotely.

| Event or Deadline | Date and Time[3] |
|---|---|
| Identification of Successful Bidder and Backup Bidder, if any | April 23, 2025 at 4:00 p.m. (prevailing Eastern Time) |
| Sale Objection Deadline | April 24, 2025 at 4:00 p.m. (prevailing Eastern Time) |
| Sale Hearing | April 28, 2025 at 11:00 a.m. (prevailing Eastern Time) or as soon thereafter as the Court's calendar permits |
| Sale Closing Deadline | April 30, 2025 |

### III.  PUBLIC ANNOUNCEMENT OF AUCTION

As soon as reasonably practicable after entry of the Bidding Procedures Order, the Debtor shall:  (a) serve on the Notice Parties a notice of the Auction and Sale (the "*Sale Notice*") and (b) post the Sale Notice on the Debtor's website maintained by Reliable, the Debtor's proposed claims and noticing agent.

### IV.  BIDDING PROCESS

These Bidding Procedures set forth the terms by which prospective bidders may qualify for and participate in an Auction, thereby competing to make the highest or otherwise best offer for all or a portion of the Assets.  The Debtor, in consultation with its advisors and the Consultation Parties, will consider any Bid for the Assets.

#### A.  Potential Bidders

To participate in the bidding process under these Bidding Procedures, an entity interested in consummating the Sale must deliver the following to the Debtor (any such entity, a "*Potential Bidder*"):

  i. an executed confidentiality agreement on terms reasonably acceptable to the Debtor (a "*Confidentiality Agreement*"); and

  ii. any other evidence the Debtor may reasonably request to evaluate the entity's fitness to participate in the bidding process or ability to timely acquire the Assets.

#### B.  Stalking Horse Bidder

Subject to the terms and conditions of the Bidding Procedures Order, the Debtor is authorized, in consultation with the Consultation Parties, but not obligated, in an exercise of its business judgment, to (a) select a bidder to act as Stalking Horse Bidder and enter into a Stalking Horse Agreement with the Stalking Horse Bidder so selected and (b) in connection with any Stalking Horse Agreement with a Stalking Horse Bidder, provide bid protections with the consent of the Consultation Parties (the "*Bid Protections*").

No later than two (2) business days after the selection of a Stalking Horse Bidder, the Debtor shall file a notice with the Court of such selection that includes a copy of the Stalking Horse Agreement.

    **C.**    **Due Diligence**

Only Potential Bidders shall be eligible to receive due diligence information and access to the Debtor's electronic data room (the "*Data Room*") and to receive additional non-public information regarding the Debtor. Only Potential Bidders that enter into a Confidentiality Agreement with the Debtor will be permitted to conduct any due diligence that includes confidential information. The Debtor and its advisors will use commercially reasonable efforts to provide due diligence information to any such Potential Bidder, as requested by such Potential Bidder in writing, as soon as reasonably practicable after such request. The Debtor shall post confidential information concerning the Assets to the Debtor's electronic data room which will be made available to Potential Bidders. Unless extended by the Debtor in its reasonable business judgment and in consultation with the Consultation Parties, each Potential Bidder's due diligence period will end on the Bid Deadline, after which the Debtor shall have no obligation to furnish any due diligence information.

The Debtor need not furnish any confidential information relating to the Assets, liabilities of the Debtor, or any other information to any person or entity except to a Potential Bidder or to such Potential Bidder's duly authorized representatives to the extent provided in the applicable Confidentiality Agreement and requested by such Potential Bidder. The Debtor may decline to provide (or elect to withdraw access to) due diligence information to any Potential Bidder who, at such time has not established (or there is otherwise a reasonable basis to doubt) that such Potential Bidder intends in good faith to, or has the capacity to, consummate the Sale. The Debtor shall promptly notify a Potential Bidder, the Committee and the United States Trustee, of the Debtor's determination that the Potential Bidder is not proceeding in good faith to, or lacks the capacity to, consummate the Sale.

The Debtor also reserves the right to withhold any diligence materials that the Debtor determines are sensitive or otherwise not appropriate for disclosure to a Potential Bidder, including a Potential Bidder the Debtor determines is (or is affiliated with) a competitor or supplier of the Debtor, or is otherwise an entity to which the disclosure of sensitive or competitive information, may risk unduly placing the Debtor at a competitive disadvantage or subject it to regulatory scrutiny. Neither the Debtor nor its representatives shall be obligated to furnish information of any kind whatsoever to any entity that is not determined to be a Potential Bidder.

***All due diligence requests are to be sent to the Debtor's Investment Banker through Email Notice.***

    1.    <u>Communications with Potential Bidders</u>

Notwithstanding anything to the contrary in these Bidding Procedures, all substantive communications related to Bids or any Sale relating to the Debtor between or amongst Potential Bidders shall be conducted exclusively through the Debtor and its advisors. Communications between and amongst Potential Bidders relating to the Debtor or these Bidding Procedures is

expressly prohibited unless the Debtor or its advisors expressly consents in writing to such communication.

      2.      <u>Due Diligence of Potential Bidders</u>

Each Potential Bidder shall comply with any reasonable requests of the Debtor or its advisors for additional information or due diligence access regarding qualification as a Potential Bidder or Qualified Bidder, the terms of the Potential Bidder's Bid, or the ability of the Potential Bidder to acquire the Assets. Failure by a Potential Bidder to comply with such reasonable requests may be a basis for the Debtor to determine that such bidder is no longer a Potential Bidder or that any bid made by such Potential Bidder is not a Qualified Bid (a "*Non-Qualifying Bid*").

The Debtor and its advisors shall be obligated to maintain in confidence any confidential information in accordance with any applicable confidentiality agreement, except as otherwise set forth in these Bidding Procedures. The Debtor agrees to use, and to instruct its advisors and representatives to use, such confidential information only in connection with the evaluation of Bids during the bidding process or otherwise in connection with the Chapter 11 Case, in each case in accordance with the terms of any applicable confidentiality agreement.

Notwithstanding the foregoing and the provisions contained in any applicable confidentiality agreement, the Debtor and its advisors may disclose confidential information: (i) with the prior written consent of such Potential Bidder; (ii) to the applicable Potential Bidder; (iii) in accordance with these Bidding Procedures; and (iv) as otherwise required or allowed by any applicable confidentiality agreement with respect to a particular Potential Bidder or other agreement, law, court or other governmental order, or regulation, including, as appropriate, to regulatory agencies.

***The Debtor encourages all Potential Bidders interested in participating in these marketing processes to promptly notify the Debtor and its advisors of such interest.***

      **D.**      **<u>Qualified Bidders</u>**

      1.      A "*Qualified Bidder*" is a Potential Bidder who satisfies the following requirements (unless waived by the Debtor in its reasonable business judgment): (a) the Potential Bidder has demonstrated the financial capability to consummate the Sale (as determined by the Debtor); (b) the Potential Bidder's Bid is a Qualified Bid; and (c) the Debtor has determined the Potential Bidder should be considered a Qualified Bidder. Within two (2) days after the Bid Deadline, the Debtor's advisors will notify each Potential Bidder whether such Potential Bidder is a Qualified Bidder. Any Stalking Horse Bidder shall be deemed a Qualified Bidder for all purposes under these Bidding Procedures.

      2.      If any Potential Bidder is determined by the Debtor not to be a Qualified Bidder, the Debtor will refund such Potential Bidder's Deposit and all accumulated interest, if any, thereon within five business days of the Bid Deadline.

3. For the avoidance of doubt, the Debtor expressly reserves the right to notify a Potential Bidder that its Bid is a Non-Qualifying Bid and permit such Potential Bidder to revise or supplement a Non-Qualifying Bid to make it a Qualified Bid.

4. Between the date that the Debtor notifies a Potential Bidder that it is a Qualified Bidder and the Auction, if any, the Debtor may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Without the written consent of the Debtor, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase its consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified in these Bidding Procedures; *provided*, that, for the avoidance of doubt, any Qualified Bid may be improved at the applicable Auction, if any, as set forth herein. Any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth in these Bidding Procedures, and the Debtor expressly reserves the right to request additional diligence information and assurances necessary to assess and ensure continued compliance (including additional information, assurances, or commitments regarding the applicable Qualified Bidder's financial capability to consummate the transactions contemplated by such improved Qualified Bid).

### E. Bid Requirements

1. A Bid by a Potential Bidder that is submitted in writing and satisfies each of the following requirements (the "*Bid Requirements*"), as determined by the Debtor in its reasonable business judgment, in consultation with the Consultation Parties, shall constitute a "*Qualified Bid*". Any Stalking Horse Bid shall be deemed a Qualified Bid for all purposes under these Bidding Procedures and at all times. The Debtor and its professionals shall promptly deliver copies of all bids to the Consultation Parties after the applicable Bid Deadline.

2. <u>Documentation</u>. Each Bid must be accompanied by a duly authorized and executed asset purchase agreement (the "*Purchase Agreement*"), based on either the form asset purchase agreement uploaded to the Data Room (if any) or the Stalking Horse Agreement (if one exists), and an electronic copy of such Purchase Agreement in Microsoft Word format, with a redline to the form asset purchase agreement (if any) or to the Stalking Horse Agreement (if one exists). Each such Purchase Agreement must provide for payment in cash at closing of the Bid Protections to the Stalking Horse Bidder, if any. In addition, each Bid must be accompanied by a statement that the Bid will be irrevocable (whether or not such Bid is selected as the highest or otherwise best bid to purchase the Assets or next highest or otherwise best bid) until the consummation of the Sale. The documents described above are defined as the "*Qualified Bid Documents*."

3. <u>Purchase Price</u>. Each Bid must clearly set forth the consideration to be provided for the applicable Assets, including the allocation of responsibility for the payment of any cure costs and otherwise identifying separately any cash and non-cash components. If there is a break-up fee or an expense reimbursement provided for in any Stalking Horse Agreement, the Bid must clearly provide for the payment in full of all such amounts on the date the Sale is consummated. The consideration described above is defined as the "*Purchase Price*."

4. <u>Credit Bidding.</u> A Potential Bidder holding a perfected security interest in any of the Assets (a "*Secured Creditor*") may seek to credit bid all or a portion of the Potential Bidder's claims for the collateral in which it holds a perfected security interest (each such bid, a "*Credit Bid*") in accordance with section 363(k) of the Bankruptcy Code. In order to qualify to Credit Bid, a Secured Creditor (i) must be a Qualified Bidder and a Credit Bid must qualify as a Qualified Bid; and (ii) that has a Security Interest in the assets being sold that is disputed, must have its Security Interest allowed prior to being able to submit a Credit Bid. For the avoidance of doubt, the DIP Lender shall be entitled to submit a Credit Bid by the Bid Deadline in an amount up to the amount of outstanding indebtedness owed to the DIP Lender and any such Credit Bid shall be deemed to be a Qualified Bid; *provided, however* that nothing in this paragraph 4 or these Bidding Procedures shall impact or alter the Committee's rights to challenge the validity of any liens in accordance with the terms of the DIP Orders.

5. <u>Deposit</u>. Each Bid must be accompanied by a cash deposit in the amount equal to 10% of the aggregate cash Purchase Price of the Bid, to be held in a segregated, non-interest-bearing escrow account to be identified and established by the Debtor (the "*Deposit*"), *provided, however*, that any Potential Bidder who submits a Bid that is entirely comprised of a Credit Bid shall not be required to provide a Deposit.

6. <u>Terms; Specify Acquired Assets and Assumed Liabilities</u>. The Bid must identify the Assets (including the specific executory contracts and unexpired leases) such Potential Bidder wishes to bid on and the liabilities and obligations (including applicable cure costs) to be assumed by the Potential Bidder in the Sale.

7. <u>Committed Financing</u>. To the extent that a Bid is not accompanied by evidence of the Qualified Bidder's capacity to consummate the Sale set forth in its Bid with cash on hand, each Bid must include unconditional committed financing from a reputable financing institution, documented to the satisfaction of the Debtor that demonstrates that the Qualified Bidder has: (i) received sufficient debt and/or equity funding commitments to satisfy the Qualified Bidder's Purchase Price and other obligations under its Bid; and (ii) adequate working capital financing or resources to finance going concern operations for the applicable Assets and the Sale. Such funding commitments or other financing must be unconditional and must not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions reasonably acceptable to the Debtor.

8. <u>Contingencies; No Financing or Diligence Outs</u>. A Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, or on the outcome or review of due diligence.

9. <u>Identity</u>. Each Bid must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid and the complete terms of any such participation. Each Bid must also fully disclose whether any current or former officer, director, or equity holder of the Debtor, or any entity affiliated with any current or former officer, director, or equity holder of the Debtor, will be bidding or otherwise participating in connection with such Bid, including any employment or compensation arrangements being negotiated or agreed to between the Qualified Bidder and any employee of the Debtor. Under no circumstances shall any

undisclosed insiders, principals, equity holders, or financial backers of the Debtor be associated with any Bid (including any Overbid at the Auction). Each Bid must also include contact information for the specific persons and counsel whom Goldstein & McClintock LLLP and the Debtor's Investment Banker should contact regarding such Bid.

10. Adequate Assurance of Future Performance. Each Bid must (i) reasonably identify any executory contracts and unexpired leases of the Debtor to be assumed or assumed and assigned in connection with the Sale, and (ii) demonstrate, in the Debtor's reasonable business judgment, that the Qualified Bidder can provide adequate assurance of future performance under all such executory contracts and unexpired leases. Such information related to adequate assurance of future performance shall be disseminated to the affected counterparty either via overnight mail or by email to the notice parties identified in the contract and any counsel of record therefor in this Chapter 11 Case, within 24 hours of receipt of such Bid, and in no event later than 12 hours after the Bid Deadline.

11. Binding and Irrevocable. A Qualified Bidder's Bid for the Assets shall be irrevocable unless and until the Debtor notifies such Qualified Bidder that such Bid has not been approved as a Successful Bid or a Backup Bid at the Sale Hearing.

12. Authorization. A Bid must include written evidence reasonably acceptable to the Debtor demonstrating appropriate corporate authorization to submit the Bid and consummate the Sale; *provided* that if the bidder is an entity specially formed for the purpose of effectuating the Sale, then the bidder must furnish written evidence reasonably acceptable to the Debtor of the approval of the submission of the Bid and consummation of the Sale by equity holder(s) of such bidder.

13. As-Is, Where-Is. Each Bid must include a written acknowledgement and representation that the Qualified Bidder: (i) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or such assets in making its Bid; and (iii) did not and will not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise, regarding the applicable Assets or the completeness of any information provided in connection therewith or at an Auction, except those expressly stated in the Stalking Horse Agreement (if applicable).

14. Adherence to Bidding Procedures. By submitting a Bid, each Qualified Bidder is agreeing, and shall be deemed to have agreed, to abide by and honor the terms of these Bidding Procedures and after the conclusion of any Auction, agrees not to submit a Bid, or seek to reopen the Auction.

15. Government Approvals. Each Bid must include a description of all governmental, licensing, regulatory, or other approvals or consents that are required to close the proposed Sale, together with evidence satisfactory to the Debtor of the ability to obtain such consents or approvals in a timely manner, as well as a description of any material contingencies or other conditions that

will be imposed upon, or that will otherwise apply to, the obtainment or effectiveness of any such consents or approvals.

16. **Government Approvals Timeframe**. Each Bid must set forth an estimated timeframe for obtaining any required, governmental, licensing, regulatory, or other approvals or consents for consummating any proposed Sale.

17. **Consent to Jurisdiction**. By submitting a Bid, each Qualified Bidder agrees and shall be deemed to have agreed, to submit to the jurisdiction of the Court and waives any right to a jury trial in connection with any disputes relating to the Debtor's qualification of bids, the Auction, if any, the construction and enforcement of these Bidding Procedures, the Sale documents, and the closing, as applicable.

18. **Bid Deadline**. Each Bid must be transmitted via email (in .pdf or similar format) so as to be **actually received** by the Bid Deadline on or before **4:00 p.m. (prevailing Eastern Time) on April 18, 2025** to:

   i. <u>Debtor</u>. Dormify, Inc., Attn: Albert Kirchhein (kirchhein@aol.com);

   ii. <u>Debtor's Counsel</u>. Goldstein & McClintock LLLP, Attn: Maria Aprile Sawczuk (marias@goldmclaw) and Joshua Grenard (joshuag@goldmclaw.com); and

   iii. <u>Debtor's Investment Banker</u>. B. Riley Advisory Services, Attn: Mark Shapiro (mshapiro@brileyfin.com)

**F.  Auction**

1. Cancellation of Auction

In the event that (i) the Debtor has entered into a Stalking Horse Agreement, and such Stalking Horse Agreement has been approved pursuant to the Bidding Procedures Order, and no Qualified Bid other than the Stalking Horse Bid is received in accordance with these Bidding Procedures with respect to a scheduled Auction, or (ii) only one Qualified Bid is received in connection with an Auction, then the Debtor may cancel the Auction, and may decide, in the Debtor's reasonable business judgment and in consultation with the Consultation Parties, to designate the Stalking Horse Bid or only Qualified Bid as the Successful Bid for the Assets and pursue entry of the order approving the Sale of the Assets to the Stalking Horse Bidder pursuant to the Stalking Horse Agreement or to the Qualified Bidder.

If the Auction is cancelled, the Debtor shall promptly file a notice of cancellation of the Auction and designation of the Stalking Horse Bid or only Qualified Bid as the Successful Bid.

2. Bid Assessment Criteria

The Debtor shall evaluate all Qualified Bids and identify the Qualified Bid that is, in the Debtor's judgment, the highest or otherwise best Qualified Bid for the Assets being sold at the

Auction (the "*Baseline Bid*") and provide copies of the applicable Qualified Bid Documents supporting the applicable Baseline Bid to each Qualified Bidder at or prior to the Auction.

When determining the highest or otherwise best Qualified Bid and selecting the Baseline Bid and the Successful Bid (as defined below), as compared to other Qualified Bids, the Debtor may consider the following factors in addition to any other factors that the Debtor deems appropriate (collectively, the "*Bid Assessment Criteria*"):

(a) the number, type, and nature of any changes to the form of Purchase Agreement or Stalking Horse Agreement, if any, requested by the Qualified Bidder, including the Assets sought and obligations to be assumed in the Qualified Bid;

(b) the amount and nature of the total consideration, including the assumption of liabilities;

(c) the likelihood of the Qualified Bidder's ability to close the Sale and the timing thereof;

(d) the net economic effect of any changes to the value to be received by the Debtor's estate from the transaction contemplated by the Qualified Bid Documents;

(e) the tax consequences of such Qualified Bid;

(f) the assumption of liabilities, including obligations under contracts and leases;

(g) ability to close by April 30, 2025 (the "**Sale Closing Deadline**"); and

(h) the cure amounts to be paid.

3. <u>Auction Time and Location</u>

The Auction, if any, shall take place on **April 21, 2025 at 10:00 a.m. (prevailing Eastern Time)** at the place, including by remote video, the Debtor shall designate. The Auction, if any, shall be conducted in a timely fashion according to the procedures set forth herein. The Debtor will send all Qualified Bidders the location of the Auction and means by which they may attend prior to the Auction.

The Auction may be adjourned or continued to a later date by the Debtor by sending notice to all Qualified Bidders and any other party known to the Debtor that indicated an intention to attend the Auction.

4. <u>The Debtor Shall Conduct the Auction</u>

The Debtor and its professionals shall direct and preside over the Auction, if any. At the start of the Auction, the Debtor shall describe the material terms of the Baseline Bid for the Assets to be sold at the Auction. The Debtor shall maintain a written transcript of the Auction and all Bids made and announced at the Auction, if any, including the Baseline Bid, all applicable Overbids, and the Successful Bid.

Only (a) Qualified Bidders (including the Stalking Horse Bidder, if any) and their legal and financial advisors, (b) the Committee and its legal and financial advisors, and (c) actual creditors of the Debtor (provided that they give at least 48 hours' notice to the Debtor's counsel of their intention to attend the Auction via email to Goldstein & McClintock LLLP, Attn: Maria Aprile Sawczuk (marias@goldmclaw) and Joshua Grenard (joshuag@goldmclaw.com)), shall be entitled to attend the Auction, if any, and the Qualified Bidders shall appear at the Auction and may speak or bid themselves or through duly authorized representatives. Only Qualified Bidders shall be entitled to bid at the Auction, if any.

The Debtor explicitly reserves the right, in its business judgment, to exercise its discretion in conducting the Auction, including determining whether to adjourn the Auction to facilitate separate discussions between any Qualified Bidders and the Debtor, as applicable.

5. Terms of Overbids

"*Overbid*" means any bid made at the Auction, if any, by a Qualified Bidder subsequent to the Debtor's announcement of the Baseline Bid. Each applicable Overbid must comply with the following conditions:

**Minimum Overbid Increment.** The Overbid for the Assets shall provide for total consideration with a value that exceeds the value of the consideration under the Baseline Bid by an incremental amount that is not less than an amount to be announced at or before the commencement of the Auction (as applicable, the "*Minimum Overbid Increment*"), and successive Overbids shall be higher than the Prevailing Highest Bid (as defined below) by at least the Minimum Overbid Increment. The Debtor reserves the right to announce reductions or increases in the Minimum Overbid Increment at any time during the Auction, if any. Additional consideration in excess of the amount set forth in the respective Baseline Bid or Prevailing Highest Bid may include: (a) cash, and (b) assumption of liability, which shall be ascribed a value by the Debtor in determining whether the Minimum Overbid Increment has been met.

**Conclusion of Each Overbid Round.** Upon the solicitation of each round of applicable Overbids, the Debtor may announce a deadline (as the Debtor may, in its business judgment, extend from time to time, the "*Overbid Round Deadline*") by which time any Overbids must be submitted to the Debtor.

**Overbid Alterations.** An applicable Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid so long as, after giving effect to the same, the terms of the Overbid are no less favorable to the Debtor's estate than any prior Bid or Overbid of such Qualified Bidder, as determined in the Debtor's reasonable business judgment and in Consultation with the Consultation Parties, and shall otherwise comply with the terms of these Bidding Procedures.

**Announcing Highest Bid.** Subsequent to each Overbid Round Deadline, the Debtor shall announce whether the Debtor, in consultation with the Consultation Parties, has identified in the applicable Overbid round, an Overbid (or combination of Overbids) as being higher or otherwise better than, in the Overbid round, the Baseline Bid plus the Minimum Overbid Increment, or in subsequent rounds, the Overbid previously designated by the Debtor as the prevailing highest or

otherwise best Bid (the "*Prevailing Highest Bid*"). The Debtor shall describe to all Qualified Bidders the material terms of any new Overbid designated by the Debtor as the Prevailing Highest Bid as well as the value attributable by the Debtor to such Prevailing Highest Bid based on, among other things, the Bid Assessment Criteria.

6. <u>Consideration of Overbids</u>

The Debtor reserves the right, in its reasonable business judgment, and in consultation with the Consultation Parties, to adjourn the Auction, if any, one or more times to, among other things: (i) facilitate discussions between and amongst the Debtor and the Qualified Bidders, as appropriate; (ii) allow Qualified Bidders to consider how they wish to proceed; and (iii) provide Qualified Bidders the opportunity to provide the Debtor with such additional evidence as the Debtor, in its reasonable business judgment, may require that the Qualified Bidder has sufficient funds or has received sufficient non-contingent debt and/or equity funding commitments to consummate the Sale at the prevailing Overbid amount.

7. <u>Closing the Auction</u>

The Auction, if any, shall continue until there is one Bid for the Assets that the Debtor determines, in its reasonable business judgment, to be the highest or otherwise best Bid for the Assets. Such Bid shall be declared the "*Successful Bid*" and such Qualified Bidder, the "*Successful Bidder*," at which point the Auction will be closed. The Auction, if any, shall not close unless and until all Qualified Bidders that have not previously declined to submit an Overbid in any prior round have been given a reasonable opportunity to submit an Overbid at the Auction to the then Prevailing Highest Bid. Such acceptance by the Debtor of the Successful Bid is conditioned upon approval by the Court of the Successful Bid.

The Successful Bidder shall, within one business day after the conclusion of the Auction, submit to the Debtor fully executed revised documentation memorializing the terms of the Successful Bid. The Successful Bid may not be assigned to any party without the consent of the Debtor. In addition, the Successful Bidder (and Backup Bidder upon becoming a Successful Bidder) shall provide appropriate disclosures to the Debtor (including, without limitation, the identity of the person(s), entity(ies), and/or financial institution(s) that will be funding the cash portion of the Successful Bid) to permit them to comply with applicable requirements under the Patriot Act, anti-money laundering laws and related federal regulatory requirements.

As soon as reasonably practicable after closing the Auction, if any, and in any event not more than two (2) business days following closing the Auction, the Debtor shall cause a notice of Successful Bid and Successful Bidder, and the Qualified Bid Documents for the Successful Bid and Backup Bid (defined below), to be filed with the Court.

To the extent that any Qualified Bid is modified before, during, or after the Auction, the Debtor reserves the right to require that such Qualified Bidder adjust its Deposit so that it equals 10% of the aggregate cash portion of the Purchase Price.

8. <u>No Collusion; Good-Faith Bona Fide Offer</u>

Each Qualified Bidder participating in the Auction will be required to confirm on the record at such Auction that (a) it has not engaged in any collusion with respect to the bidding and the Auction, (b) its Qualified Bid is a good faith *bona fide* offer that it intends to consummate if selected as the Successful Bidder or Backup Bidder, and (c) the Qualified Bidder agrees to serve as the Backup Bidder if its Qualified Bid is the next highest or otherwise best bid after the Successful Bid.

### G. Auction Backup Bidder

Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder with the next-highest or otherwise second-best Bid, as determined by the Debtor in the exercise of its reasonable business judgment (the "*Auction Backup Bid*"), shall be required to serve as a backup bidder (the "*Auction Backup Bidder*"), and each Qualified Bidder shall agree and be deemed to agree to be the Backup Bidder if so designated by the Debtor.

The identity of the Auction Backup Bidder and the amount and material terms of the Auction Backup Bid shall be announced by the Debtor at the conclusion of the Auction, if any, at the same time the Debtor announces the identity of the Successful Bidder. The Auction Backup Bidder shall be required to keep its Bid (or if the Auction Backup Bidder submits one or more Overbids at the Auction, its final Overbid) open and irrevocable until the closing of the transaction with the applicable Successful Bidder. The Auction Backup Bidder's Deposit shall be held in escrow until the closing of the transaction with the applicable Successful Bidder.

The Auction Backup Bidder shall, within one business day after the conclusion of such Auction, submit to the Debtor fully executed revised documentation memorializing the terms of the Backup Bid. The Backup Bid may not be assigned to any party without the consent of the Debtor.

For purposes of these Bidding Procedures, "*Backup Bid*" and "*Backup Bidder*" shall mean if an Auction is held, the applicable Auction Backup Bid and Auction Backup Bidder, respectively.

All Qualified Bids (other than the Successful Bid and the Backup Bid) shall be deemed rejected by the Debtor on and as of the date of approval of the Successful Bid and Backup Bid by the Court.

### H. Reservation of Rights

The Debtor reserves its rights to modify these Bidding Procedures, in consultation with the Consultation Parties, in its reasonable business judgment in any manner that will best promote the goals of the bidding process, or impose, at or prior to the Auction, if any, additional customary terms and conditions on the Sale of the Assets, including: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction, including at the Auction and/or adjourning any Sale Hearing, including in open court, without further notice; (c) modifying the Bidding Procedures and/or adding procedural rules or methods of bidding that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; (e) waiving, or imposing additional, terms and conditions set forth herein with respect to Potential Bidders; and (f) rejecting any or all bids or Bids.

**I.     Approval of Sale Transaction**

A hearing to consider the approval of the Sale to a Successful Bidder and the approval of the corresponding Backup Bid, if any (the "*Sale Hearing*"), will take place before the Honorable Thomas M. Horan at the Bankruptcy Court, 824 Market Street, Wilmington, Delaware on **April 28, 2025 at 11:00 a.m. (prevailing Eastern Time).**

After consultation with the Consultation Parties, the Sale Hearing may be adjourned or continued to a later date by the Debtor by sending notice prior to or making an announcement at such Sale Hearing. No further notice of any such adjournment or continuance will be required to be provided to any party (including any Stalking Horse Bidder).

At the Sale Hearing, the Debtor, in consultation with its advisors, shall present the Successful Bid and any Backup Bid, to the Court for approval. The Sale Order submitted at the Sale Hearing shall provide that: (i) if the Successful Bid is not consummated, the Debtor may file a notice with the Court designating the Backup Bidder as the Successful Bidder, and such Backup Bidder shall be deemed the Successful Bidder for all purposes; and (ii) the Debtor will be authorized, but not required, to consummate all transactions contemplated by the Backup Bid, once so designated as the Successful Bid, without further order of the Court or notice to any party.

**J.     Return of Deposits**

The Deposits of all Qualified Bidders shall be held in one or more non-interest-bearing escrow accounts by the Debtor, but shall not become property of the Debtor's estate absent further order of the Court; *provided*, *however*, the Deposit of any Successful Bidder (including any Backup Bidder that becomes a Successful Bidder) may be forfeited to the Debtor or credited toward the Purchase Price set forth in the Successful Bid, in either case as set forth in these Bidding Procedures. The Deposit of any Qualified Bidder that is neither a Successful Bidder nor a Backup Bidder shall be returned to such Qualified Bidder not later than five (5) business days after the applicable hearing to authorize the Debtor's consummation of the Sale. The Deposit of the Backup Bidder, if any, shall be returned to such Backup Bidder no later than three (3) business days after the closing of the transaction with the Successful Bidder. Upon the return of the Deposits, the owner shall receive any and all interest that will have accrued thereon. If the Successful Bidder (or Backup Bidder, as applicable) timely closes on its transaction, its Deposit shall be credited towards the applicable purchase price. If the Successful Bidder (or Backup Bidder, if applicable) fails to consummate a sale transaction because of a breach or failure to perform on the part of the Successful Bidder (or Backup Bidder, if applicable), the Debtor will not have any obligation to return the Deposit deposited by the Successful Bidder (or Backup Bidder, if applicable), and such Deposit shall irrevocably become property of the Debtor as partial compensation for the damages caused to the Debtor and its estate as a result of such breach or failure to perform without prejudice to any claims, rights, or remedies of the Debtor or its estate for additional damages.

**K.     Fiduciary Out**

Nothing in these Bidding Procedures shall restrain the Debtor from taking any action, or refraining from taking any action, to the extent that the Debtor determines, based on the written

advice of counsel, that taking such action, or refraining from taking such action, as applicable, is required to comply with applicable law or its fiduciary obligations under applicable law.